THE MERIDEN RECORD COMPANY *v.* MILDRED O.
BROWNING, TOWN CLERK AND REGISTRAR OF
VITAL STATISTICS OF THE TOWN OF
WALLINGFORD

CIRCUIT COURT SEVENTH CIRCUIT
FILE No. CV 7-7112-18907

Memorandum filed December 30, 1971

*Joseph M. Delaney,* of Wallingford, for the plaintiff.

*Peter E. Greene,* of Wallingford, for the defendant.

JACOBS, J. This is an appeal from the denial to the plaintiff, pursuant to § 1-20 of the General Stat-

utes,[1] of an order directing the defendant to issue to the plaintiff a certified copy of the death record of Norman J. LaFreniere.[2] The defendant denied access to the death record "because the death record and certificate is a medical file and is not a public record under § 1-19 of the General Statutes." The commissioner of health construes the pertinent portion of § 1-19 to mean that disclosure of medical files as a death record "would constitute an invasion of personal privacy . . . [and they are not] deemed public records."[3] The commissioner further states that "[a]mong the causes of death sometimes mentioned are references to syphilis, miscarriages, cancer, tuberculosis, alcoholism and other matters which at least some people would feel constitute an invasion of privacy," and that "[f]or these reasons we have always made a practice not to consider the diagnosis of cause of death a public record which is open for public inspection."

Our first inquiry is whether a newspaper has an interest sufficient to create a right of inspection. "It

---

[1] General Statutes § 1-20 provides that on an appeal from the denial of the right of inspection, if the Circuit Court "determines such denial was not for just and proper cause, it shall enter such order for disclosure as it deems proper."

[2] The parties stipulated and agreed in open court that the court should reach the issues and decide this case on the merits. The court, therefore, does not consider nor decide the plea in abatement, the demurrer to the plea in abatement, etc. The court followed the theory adopted by the parties and has decided the case on the merits.

[3] "Sec. 1-19. ACCESS TO PUBLIC RECORDS. Except as otherwise provided . . . , all records made, maintained or kept on file by any executive, administrative, legislative or judicial body, agency, commission or official of the state, or any political subdivision thereof, . . . shall be public records and every resident of the state shall have the right to inspect or copy such records at such reasonable time as may be determined by the custodian thereof. . . . [P]ersonnel or medical files and similar files the disclosure of which would constitute an invasion of personal privacy, and investigatory files compiled for law enforcement purposes, except to the extent available by law to a private citizen, shall not be deemed public records for the purposes of this section . . . ."

has been held that the editor and publisher of a newspaper has such a special interest, one sufficient to create a right to inspect . . . and one sufficient to enable him to maintain suit in his own name where that need exists." Cross, The People's Right to Know, p. 56.[4] It goes without saying that "the inspection must be for a purpose that is not improper." Ibid. The court concludes that the statutory language used in § 1-19, "every resident of the state," is sufficiently broad in its scope to include the appellant newspaper. See *Bend Publishing Co.* v. *Haner,* 118 Ore. 105. Also, it should be pointed out that the defendant, as the town clerk and registrar of vital statistics, does not claim, as indeed she cannot, that she stands in the decedent's shoes and asserts in his behalf an invasion of his right of privacy.

The right of a citizen to inspect public writings has its origin in the common law. In *State ex rel. Holloran* v. *McGrath,* 104 Mont. 490, 497, the rule was stated in this way: "At common law every person was entitled to the inspection, either personally or by his agent, of public records, including legislative, executive, and judicial records, provided he had an interest therein such as to enable him to maintain or defend an action for which the documents or records sought could furnish evidence or necessary information." See 76 C.J.S., Records, § 35; 45 Am. Jur., Records and Recording Laws, §§ 14, 15, 16, 17. The common-law right to inspect public records has been incorporated into Connecticut's "right to know" law. General Statutes § 1-19.

Apart from the statutory exceptions to public inspections of public records and documents created

---

[4] For a long list of cases holding that a newspaper has sufficient standing to maintain in its own name a suit such as the one here involved, see Cross, The People's Right to Know, p. 321 (App.).

by § 1-19, there are exceptions which, by their very nature, are not absolute but are subject to an implied rule of reason. It is unnecessary for the purpose of this opinion to attempt to list or catalogue the situations in which harm to the public interest would justify refusal to permit inspection. It is a subject which must be left to case-by-case decision. In short, there may be "[r]evelations . . . so intimate and so unwarranted in view of the victim's position as to outrage the community's notions of decency." *Sidis* v. *F-R Publishing Corp.*, 113 F.2d 806, 809.

"The resolution of the question as to whether issuing the death certificate to the petitioning newspapers is [for] a . . . ['just and proper cause'] under the statute [§ 1-20] must depend here, as in each case, upon its own peculiar circumstances. In balancing the community's right to be informed by the news media with the discretionary power of public officials to refuse to release public records, certain criteria may be formulated. It appears to this court that the public's right to know should be subject to only those matters which have a news value or are of public interest of a legitimate kind. . . . Even the ordinary citizen may be newsworthy under certain circumstances. Whether the event be a calamity or an honor, it may be one in which his neighbors have a legitimate interest." *Matter of Rome Sentinel Co.* v. *Boustedt,* 43 Misc. 2d 598, 599 (N.Y.) (death certificate ordered disclosed to newspaper). " 'It is the job of the Press to provide news, but not to poke and pry into things a person can rightfully and decently wish to keep to himself.' " Neill, "The Protection of Privacy," 25 Modern L. Rev. 393, 401.

Reverting once again to the New York Supreme Court case, *Matter of Rome Sentinel Co.* v. *Boustedt,* supra, the petitioning newspapers claimed that they

were entitled to the death certificate of George L. Heim "since the circumstances of death were newsworthy and they allege that the concealment of the facts concerning the cause of death gave rise in the community to false rumors as to the circumstances of death." On the other hand, the defendants claimed that "refusal to issue the death certificate was not arbitrary or capricious but within their discretionary power, and that their determination that the request by the petitioners was not for a proper purpose should not be disturbed by the courts." This court, as in *State* v. *Mayo,* 4 Conn. Cir. Ct. 511, does not construe the protective language of our statutes "as granting a public body a *carte blanche* right . . . without showing that such a protection of the records being shielded from scrutiny . . . [is] vital to public security." *Bzozowski* v. *Pennsylvania-Reading Seashore Lines,* 107 N.J. Super. 467, 473 (citing *State* v. *Mayo,* supra, with approval).

Turning now to the case at bar, in order to safeguard the rights of the parties, the court made an in camera examination of the record sought to be inspected. "Upon making such *in camera* examination, the trial judge should then make his determination of whether or not the harm likely to result to the public interest by permitting the inspection outweighs the benefit to be gained by granting inspection. In reaching a determination so based upon a balancing of the interests involved, the trial judge must ever bear in mind that public policy favors the right of inspection of public records and documents, and, it is only in the exceptional case that inspection should be denied." *State ex rel. Youmans* v. *Owens,* 28 Wis. 2d 672, 682.

An in camera inspection of the record here in question discloses nothing which might show an unwarranted invasion of the right of privacy, nor does the

court find that the document could reasonably be calculated to embarrass or humiliate the decedent's survivors or affect the "reputation or character of any person." See General Statutes § 1-20.[5]

In the *Boustedt* case, supra, to which we once again direct our attention, there was a sudden death in a place of public accommodation. The court ruled (p. 600) that this "is a matter which clearly falls within . . . [the] legitimate area of the public's right to know." Accordingly, the registrar of vital statistics was ordered by the court to issue to the petitioning newspapers the death certificate of George L. Heim.

This court finds that the defendant's denial of the request for the issuance of the death certificate of Norman J. LaFreniere was not for just and proper cause.

Accordingly, the appeal is sustained.

The defendant is ordered and directed to issue to the plaintiff the death certificate of Norman J. LaFreniere upon payment of the proper statutory fee.

---

[5] Sec. 1-20. REFUSAL OF ACCESS . . . [T]he body, agency, commission or official who has custody or control of any such public record shall refuse permission to so inspect or copy such record or records if such inspection or copying would adversely affect the public security or the financial interests of the state or any of its political subdivisions or if such denial is necessary to provide reasonable protection to the reputation or character of any person. . . ."