EDWARD W. MAHER, COMMISSIONER, DEPARTMENT OF
INCOME MAINTENANCE *v.* FREEDOM OF
INFORMATION COMMISSION ET AL.
(11128)

SPEZIALE, C. J., PETERS, PARSKEY, SHEA and GRILLO, Js.

Argued December 2, 1983—decision released February 21, 1984

*Edmund C. Walsh,* assistant attorney general, with whom, on the brief, was *Joseph I. Lieberman,* attorney general, for the appellant (plaintiff).

*Constance L. Chambers,* assistant general counsel, with whom, on the brief, was *Mitchell W. Pearlman,* general counsel, for the appellee (named defendant).

*Josephine Marchetti,* with whom, on the brief, was *J. Charles Mokriski,* for the appellee (defendant The Hartford Courant).

PETERS, J. The principal issue in this case is the accommodation of the interest in public disclosure guaranteed by the Freedom of Information Act[1] with

[1] The Freedom of Information Act is found in General Statutes §§ 1-15, 1-18a, 1-19 through 1-19b, 1-21, 1-21a, and 1-21c through 1-21k.

the interest in confidentiality guaranteed to welfare recipients by General Statutes § 17-83. This case arose out of a request by The Hartford Courant (hereinafter Courant) for computer tapes concerning medication prescribed for Connecticut Medicaid recipients. When the Department of Income Maintenance (hereinafter DIM) refused to comply with part of this request, the Courant filed a complaint with the Freedom of Information Commission (hereinafter FOIC) seeking an order to compel the DIM to disclose the requested information. After a hearing before a single hearing officer, and review by the commission of the hearing officer's recommended order, the FOIC ordered disclosure. The DIM unsuccessfully appealed the FOIC order in the trial court, and, after petition for certification, appealed to this court. We find error.

The Courant's request for disclosure[2] sought detailed information about prescription drugs made available to public assistance recipients under the Medicaid program. The DIM immediately agreed to furnish some of this information. With regard to individual physicians prescribing such medication and individual pharmacists filling such prescriptions, the DIM stated that it would produce lists of prescribers and facilities, including their identifying numbers, and the amount of payments by DIM to each prescriber and facility.[3]

[2] In its initial request to the DIM, dated July 27, 1979, the Courant asked for the following: "1. The amount of payments to individual pharmacies, and individual doctors' accounts to individual Medicaid recipients. We understand that recipients' identities are privileged information. Identifying individual recipients by a unique number will be satisfactory. 2. Which drugs were prescribed by which doctor for which recipient and on what date. The date can be either the date the prescription was written or the date it was filled. 3. The dosage of each prescription and the number of doses prescribed (e.g. 60 10 mg. Valium tablets). 4. A listing of prescribers and facilities and their account and/or identifying numbers, and a similar listing of pharmacies and providers."

[3] The DIM hence acquiesced in items 1 and 4 of the Courant's request, refusing to produce only items 2 and 3.

The parties disagreed about information sought by the Courant which the DIM claimed would, inter alia, intrude upon the confidentiality of individual Medicaid recipients. The Courant had, from the outset, indicated that individual recipients could be identified by a unique number, rather than by name. It clarified its request to ask for computer tapes to contain "at least the following information: provider number, provider name and address, case number, location code, facility number, facility name, prescriber number, prescriber name, date of service, drug description, strength of drug prescribed, prescription number, refill number, date prescription was written, quantity of drug prescribed, the drug code and the amount billed to the state."[4]

The FOIC upheld the complaint of the Courant in its entirety. Over the objection of the DIM, it issued an order in two parts, stating: "1. The respondent [DIM] shall forthwith provide the complainants [Courant] with the information requested, deleting applicant or recipient names and substituting an identifying code unique to this purpose. 2. The information requested shall be in the form of magnetic computer tape which must be produced by the most efficient and economical means and for which complainant will bear the cost."

In dismissing the DIM's subsequent appeal from this order, the trial court held that none of the DIM's various defenses of law should be sustained. In addition, it opined that the order of the FOIC complied with the nondisclosure requirements of General Statutes § 17-83 (b).[5] Although the court recognized that this

---

[4] This request, dated August 6, 1979, was a clarification by the Courant of the disputed items 2 and 3 of its July 27, 1979 request. The computer tapes which the Courant requested were to contain "a file of all invoices received from Connecticut providers for prescription drugs purchased by Medicaid in the past year, excluding the name of the patient and/or client."

[5] General Statutes § 17-83 (b) provides as follows: "No person shall, except for purposes directly connected with the administration of this chapter and in accordance with the regulations of the commissioner, solicit, disclose,

statute was designed to protect the privacy of individual recipients and applicants, it held that "[t]his privacy is not breached by making the information available on an anonymous basis, so long as identities of applicants and recipients, and any information (such as case numbers) which could conceivably lead to the identity of such persons, are not disclosed."

On this appeal, the plaintiff claims that the trial court erred, for several reasons, in dismissing the DIM's appeal from the FOIC order enforcing the Courant's request for Medicaid prescription information. The DIM claims that the FOIC could not properly order it to comply with the Courant's request because: (1) the DIM itself maintains no records in the form requested by the Courant; (2) the DIM's records are exempt under the statutory exemption for law enforcement agencies; (3) the FOIC lacked jurisdiction to order disclosures forbidden by federal law; (4) the DIM's records were exempt as confidential under federal law; (5) the DIM's records were exempt as confidential under state law. We agree only with the last of these claims.

Since it is undisputed that the DIM is a state agency for purposes of the Freedom of Information Act, the

---

receive or make use of, or authorize, knowingly permit, participate in or acquiesce in the use of, any list of the names of, or any information concerning, persons applying for or receiving assistance under this chapter, directly or indirectly derived from the records, papers, files or communications of the state or its subdivisions or agencies, or acquired in the course of the performance of official duties; provided the state department of income maintenance shall disclose to any authorized representative of the commissioner of administrative services or the commissioner of public safety such information as the state commissioner of income maintenance determines is directly related to and necessary for the department of administrative services or the department of public safety for purposes of performing their functions of collecting social services recoveries and overpayments or amounts due as support in social services cases, investigating social services fraud or locating absent parents of social services recipients; and provided no such representative shall disclose any information obtained thereby except to carry out such purpose."

DIM is bound, by General Statutes § 1-19, to maintain its records as public records available for public inspection unless these records fall within one of the statutory exemptions to disclosure. The exemptions contained in § 1-19 reflect "a legislative intention to balance the public's right to know what its agencies are doing, with the governmental and private needs for confidentiality. . . . [I]t is this balance of the governmental and private needs for confidentiality with the public right to know that must govern the interpretation and application of the Freedom of Information Act. The general rule, under the act, however, is disclosure. . . . Exceptions to that rule will be narrowly construed in light of the underlying purpose of the act . . . and the burden of proving the applicability of an exemption rests upon the agency claiming it." *Wilson* v. *Freedom of Information Commission,* 181 Conn. 324, 328–29, 435 A.2d 353 (1980).

The DIM's first claim of error urges us to conclude that the FOIC had no authority to require the DIM to produce computer tapes that involved the preparation of a new computer program. It is factually undisputed that the DIM maintains a computer storage system which collects data derived from a file of invoices of Medicaid prescriptions, that the DIM has access to that data base through programs previously developed for its own purposes, and that none of the existing programs will produce the magnetic tapes which the Courant has requested. The DIM argues that § 1-19 (a) of the Freedom of Information Act, which requires disclosure of "records maintained . . . by any public agency," should not be interpreted to require a state agency to provide information or records which the agency itself does not have readily available or which it does not maintain in the normal course of its operations. The DIM recognizes, as it must, that its argument is difficult to reconcile with the explicit command

of § 1-19a that "[a]ny public agency which maintains its records in a computer storage system shall provide a printout of any data properly identified." Where, as here, the information sought is presently stored in the agency's data base, and the cost of the new program is to be borne by the person seeking the information, an order compelling production of computer tapes is within the powers statutorily conferred upon the FOIC. See *Long* v. *United States Internal Revenue Service*, 596 F.2d 362, 365–67 (9th Cir. 1979), cert. denied, 446 U.S. 917, 100 S. Ct. 1851, 64 L. Ed. 2d 271 (1980); *State ex rel. Stephan* v. *Harder*, 230 Kan. 573, 579, 581–83, 589–90, 641 P.2d 366 (1982).

The DIM's second claim of error argues that its records are exempt from disclosure under § 1-19 (b) (3)[6] as "records of law enforcement agencies . . . compiled in connection with the detection or investigation of crime . . . ." The DIM relies, for this claim, on its statutory obligation to cooperate in the detection, prevention and prosecution of Medicaid fraud. Pursuant to that obligation, the DIM allegedly acts as an initiating investigatory agent of the state's attorney's Medicaid fraud control unit. The data collected in its computer storage system thus qualify, according to the DIM, as information "compiled in connection with the detection or investigation of crime . . . ." The trial court concluded, however, that the DIM had failed to establish its status as a law enforcement agency.[7] We too

---

[6] General Statutes § 1-19 (b) (3) (B) provides as follows: "ACCESS TO PUBLIC RECORDS. EXEMPT RECORDS. . . . (b) Nothing in sections 1-15, 1-18a, 1-19 to 1-19b, inclusive, and 1-21 to 1-21k, inclusive, shall be construed to require disclosure of . . . (3) records of law enforcement agencies not otherwise available to the public which records were compiled in connection with the detection or investigation of crime, if the disclosure of said records would not be in the public interest because it would result in the disclosure of . . . (B) information to be used in a prospective law enforcement action if prejudicial to such action . . . ."

[7] We recognize, as did the trial court, that establishment of the DIM's status as a law enforcement agency would have been necessary but not suf-

are unpersuaded that a public agency is properly to be characterized as a law enforcement agency for the purposes of the Freedom of Information Act on the sole basis that it acts to transmit information to a state fraud control unit. The terms of the agreement between the DIM and the office of the chief state's attorney clearly vest exclusive control over the operation and administration of the Medicaid fraud unit in the state's attorney. Under these circumstances, the DIM's second claim of error must be rejected.

We can conveniently consider the DIM's third and fourth claims of error jointly, because they both are premised upon the provisions of the federal law establishing the Medicaid program, Title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq. Jurisdictionally, the DIM argues that, in the absence of the federal agency charged with interpretation of Title XIX, the FOIC lacked authority to interpret the confidentiality provisions of the federal statute. Substantively, the DIM argues that Title XIX and regulations promulgated thereunder require state agencies to protect the privacy of Medicaid recipients. The disclosures ordered by the FOIC are therefore alleged to be improper because they violate federal law and hence place the state in jeopardy of federal sanctions such as loss of federal reimbursement for Title XIX expenditures. Both of these arguments miss the mark because they misconceive the nature of the federal Medicaid program. The federal government has not required the states to provide Medicaid services to the medically indigent. Instead, it has offered the states federal grants in aid, conditioned upon federally determined safeguards. State participation in the Medicaid program is thus entirely optional, although a state must

ficient to entitle it to an exemption under § 1-19 (b) (3). The trial court found that the DIM had failed to establish any of the statutory prerequisites for the exemption.

comply with the requirements of Title XIX once it elects to participate. *Harris* v. *McRae,* 448 U.S. 297, 301, 100 S. Ct. 2671, 65 L. Ed. 2d 784 (1980). Nothing in the federal regulatory scheme per se prevents a state legislature from enacting binding legislation, as part of its Freedom of Information Act or elsewhere, that is inconsistent with Medicaid safeguards. The consequence of such legislative action would be to deprive the state of the benefit of federal Medicaid moneys. While the DIM might well deplore such a result, it would have no standing to contest it. Federal law thus provides no direct defense to the disclosures that the FOIC has directed.[8]

The crucial issue is therefore in the first instance a matter of state rather than of federal law. Under General Statutes § 17-134a, the DIM "is authorized to take advantage of the medical assistance programs provided in Title XIX, entitled 'Grants to States for Medical Assistance Programs,' contained in the Social Security Amendments of 1965 and may administer the same in accordance with the requirements provided therein . . . ." In order to meet federal requirements of confidentiality,[9] General Statutes § 17-83 (b) provides that "[n]o person shall, except for purposes directly connected with the administration of this chapter and in accordance with the regulations of the commissioner, solicit, disclose, receive or make use of, or authorize, knowingly permit, participate in or acquiesce in the use of, any list of the names of, or any information concerning, persons applying for or receiving assistance under this chapter, directly or indirectly derived from

---

[8] Although the DIM has no standing to raise federal law as a defense in this action, individual Medicaid recipients or applicants do, in appropriate circumstances, have standing to challenge state statutes or regulations which conflict with the federal requirements of the Medicaid program. See *Persico* v. *Maher,* 191 Conn. 384, 393, 465 A.2d 308 (1983); *Morgan* v. *White,* 168 Conn. 336, 344, 362 A.2d 505 (1975).

[9] The federal confidentiality requirements are contained in 42 U.S.C. § 1396a (a) (7) and 42 C.F.R. §§ 431.300 through 431.307.

the records, papers, files or communications of the state or its subdivisions or agencies, or acquired in the course of the performance of official duties . . . ." The DIM argues, in its final claim of error, that the confidentiality requirement of § 17-83 (b) is a complete defense to the request of the Courant and to the order of the FOIC, because the effect of that statute is to make all Medicaid records concerning individual recipients exempt from disclosure under the prefatory clause of § 1-19 (a).[10]

It is important, in considering this claim of error, that we narrow the question to the precise circumstances of the case currently before us. The Courant has consistently disavowed any interest in identifying the names of Medicaid patients or clients. Its request for computer tapes has asked for files to be identified by a unique number instead of by name. Nonetheless, it has insisted that, without direct disclosure of names, it is entitled to know, for each Medicaid recipient: "provider number, location code, facility number, facility name, prescriber number, prescriber name, date of service, drug prescription, strength of drug prescribed, prescription number, date prescription was written, quantity of drug prescribed, the drug, the drug code and the amount billed to the state." We must decide whether so pervasive an inquiry may not indirectly lead to the disclosures that § 17-83 (b) forbids.

We cannot agree with the trial court that the present record establishes that access to the information sought by the Courant cannot "conceivably lead to the

---

[10] General Statutes § 1-19 (a) provides in part: "Sec. 1-19. ACCESS TO PUBLIC RECORDS. EXEMPT RECORDS. (a) Except as otherwise provided by any federal law or state statute, all records maintained or kept on file by any public agency, whether or not such records are required by any law or by any rule or regulation, shall be public records and every person shall have the right to inspect such records promptly during regular office or business hours or to receive a copy of such records in accordance with the provisions of section 1-15."

identity" of individual Medicaid recipients. It may well be that, in large urban centers, knowledge about particular prescriptions, written by particular doctors at particular times and filled at particular pharmacies, will provide no clue about the beneficiary of such services. The Medicaid program is, however, equally available to those who live in rural areas, who are served by a single pharmacy and a limited number of physicians. For them, the Courant's proposed inquiry creates a risk of indirect disclosure of their identity.[11] Courts in other jurisdictions have required the record to show the virtual impossibility of identifying individual patients from the records whose release has been ordered. See *Public Citizen Health* v. *Dept. of Health,* 477 F. Sup. 595, 601–602 (D.D.C. 1979), rev'd on other grounds, 668 F.2d 537 (D.C. Cir. 1981); *State ex rel. Stephan* v. *Harder,* 230 Kan. 573, 585–86, 641 P.2d 366 (1982). Counsel for the FOIC at the oral argument conceded, upon reflection, that the existing FOIC record contains no such assurance against indirect identification. For this reason, we believe that the FOIC order was improper and the appeal of the DIM should have been sustained.[12]

---

[11] In other contexts, we have held that "[f]ull and adequate means of knowledge ordinarily are, in law, equivalent to knowledge." *Attardo* v. *Ambriscoe,* 147 Conn. 708, 711, 166 A.2d 458 (1960); *Bond Rubber Corporation* v. *Oates Bros., Inc.,* 136 Conn. 248, 252, 70 A.2d 115 (1949); *Colvin* v. *Delaney,* 101 Conn. 73, 77–78, 124 A. 841 (1924).

[12] We recognize that the DIM's objection to the FOIC order was not phrased in precisely these terms, either before the FOIC or in the trial court. The DIM urged a broad interpretation of § 17-83 (b) which would protect from disclosure all information concerning persons applying for or receiving assistance and not merely the identity of such persons. This broad objection carried with it the narrower ground on which we act today. The interests which are at stake are not personal to the DIM but are those of recipients of assistance who were not able to speak for themselves in the present proceedings. In fairness to them, and in recognition of the procedural informality of administrative adjudications, we conclude that the issue as we have framed it is properly before this court.

There is error, the judgment is set aside, and the case is remanded with direction to sustain the appeal of the plaintiff.

In this opinion the other judges concurred.