CATHERINE A. GALVIN *v.* FREEDOM OF
INFORMATION COMMISSION ET AL.
(2979)

DUPONT, C.P.J., HULL and BORDEN, Js.

Argued March 12—decision released July 9, 1985

*Steven Spellman,* for the appellants (defendant David W. Schoolcraft et al.).

*Jane S. Scholl,* assistant attorney general, with whom, on the brief, were *Joseph I. Lieberman,* attorney general, and *Richard L. Lynch,* assistant attorney general, for the appellee (plaintiff).

*Constance L. Chambers,* assistant general counsel for the Freedom of Information Commission, filed a brief as amicus curiae.

DUPONT, C.P.J. The principal issue to be decided in this case is whether an autopsy report prepared by the office of the chief medical examiner is subject to public disclosure under the Freedom of Information Act (hereinafter FOIA).[1] This case arose from a request by a newspaper reporter for access to an autopsy report. The subject of the report was the victim of a shooting incident between him and a police officer. Access to the autopsy report was denied by the chief medical examiner. At the time of the request, the autopsy was not completed. The newspaper and the reporter appealed the denial of access to the freedom of information commission (hereinafter FOIC).

After a hearing on the matter was conducted, the hearing officer issued a report, proposing that the office of the medical examiner provide a copy of the autopsy report to the newspaper and the reporter. The FOIC adopted that recommendation and the plaintiff chief medical examiner appealed pursuant to General Statutes §§ 1-21i (d) and 4-183, and also obtained a stay of the FOIC's order. Her appeal to the Superior Court was successful and the defendants, Norwich Bulletin Company and David A. Schoolcraft, (hereinafter defendants) appealed to this court.[2]

---

[1] The Freedom of Information Act is set forth in General Statutes §§ 1-15, 1-18a, 1-19 through 1-19b, 1-21, 1-21a, and 1-21c through 1-21k.

[2] The FOIC did not appeal the trial court's decision. Rather, it filed a brief as an amicus curiae, which discussed solely the trial court's and the

The chief medical examiner claimed, and continues to claim, that the prefatory clause of General Statutes § 1-19 (a)[3] read in conjunction with General Statutes § 19a-411[4] and the regulations promulgated there-

FOIC's findings regarding General Statutes §§ 1-19 (b) (1), 1-19 (b) (2), and 1-19 (b) (3).

[3] General Statutes § 1-19 (a) provides, in pertinent part: "Except as otherwise provided by any federal law or state statute, all records maintained or kept on file by any public agency, whether or not such records are required by any law or by any rule or regulation, shall be public records and every person shall have the right to inspect such records promptly. . . . Any agency rule or regulation or part thereof, that conflicts with the provisions of this subsection or diminishes or curtails in any way the rights granted by this subsection shall be void. Each such agency shall keep and maintain all public records in its custody at its regular office or place of business in an accessible place . . . . Any certified record hereunder attested as a true copy by the clerk, chief or deputy of such agency or by such other person designated or empowered by law to so act, shall be competent evidence in any court of this state of the facts contained therein. . . ."

[4] General Statutes § 19a-411 provides, "The office of the chief medical examiner shall keep full and complete records properly indexed, giving the name, if known, of every person whose death is investigated, the place where the body was found, the date, cause and manner of death and containing all other relevant information concerning the death and a copy of the death certificate. The full report and detailed findings of the autopsy and toxicological and other scientific investigation, if any, shall be a part of the record in each case. The office shall promptly notify the state's attorney having jurisdiction of such death and deliver to him copies of all pertinent records relating to every death in which further investigation may be advisable. . . . The report of examinations conducted by the chief medical examiner, deputy chief medical examiner, an associate medical examiner or an authorized assistant medical examiner, and of the autopsy and other scientific findings may be made available to the public only through the office of the chief medical examiner and in accordance with section 1-19 and the regulations of the commission. Any person may obtain copies of such records upon such conditions and payment of such fees as may be prescribed by the commission, provided no person with a legitimate interest therein shall be denied access to such records. Upon application by the chief medical examiner or state's attorney to the superior court for the judicial district in which the death occurred, or to any judge of the superior court in such judicial district when said court is not then sitting, said court or such judge may limit such disclosure to the extent that there is a showing by the chief medical examiner or state's attorney of compelling public interest against disclosure of any particular document or documents. Public authorities, professional, medical, legal or scientific bodies or universities

under[5] exempts the autopsy report from disclosure, and that the autopsy report is, in addition, exempted from disclosure, under either § 1-19 (b) (1), § 1-19 (b) (2), or

or similar research bodies may, in the discretion of the commission, have access to all records upon such conditions and payment of such fees as may be prescribed by the commission. Where such information is made available for scientific or research purposes, such conditions shall include a requirement that the identity of the deceased persons shall remain confidential and shall not be published."

[5] Regs. Conn. State Agencies § 19-525-10 provides, in pertinent part:

"(a) Reports of investigations and of autopsies are prepared on standard forms issued by the Office of the Medical Examiner. The original reports of investigations, reports of hospital deaths, and of authorized autopsies are transmitted to the Office of the Medical Examiner and copies are obtainable only from the Chief Medical Examiner. . . .

"(b) Retention of records; inspection of records. The Office of the Medical Examiner keeps full and complete records of every death reported and investigated. These records pursuant to Section 1-19 of the Connecticut General Statutes, are not open to public inspection. They are retained at the Office of the Medical Examiner for a period of ten years from the date when the death is first reported to it; after which time, the complete files are microfilmed and the original records disposed of.

"(c) Inquiries and requests for copies of records. Inquiries concerning a death may be made in person or by letter to the Chief Medical Examiner . . . . Copies of records are furnished to those having a legitimate interest therein upon completion of the investigation into the death and final certification of the cause of death. Certified copies of such records are admissible as evidence in any court in the State. . . ."

"(1) Requests for copies of records should be in writing addressed to the Chief Medical Examiner, . . .

"(2) Requests for records sought by an attorney acting on behalf of an estate should be accompanied by a duly executed authorization by the executor or administrator of the estate.

Requests by attorneys, insurance claims agents or other interested parties, other than the next of kin or persons acting on behalf of the next of kin, should state reasons for which records are required.

"(3) Upon receipt of request from defense counsel of record in a criminal case for copies of reports in said case, the Chief Medical Examiner shall promptly notify the Office of the State's Attorney which has jurisdiction of such request and shall release without charge therefor, within seven working days, to the defense attorney such copies as requested unless the Chief Medical Examiner is notified within said period of time that an application limiting disclosure has been made by the State's Attorney pursuant to provisions of Section 19-535 of the Connecticut General Statutes.

§ 1-19 (b) (3).[6] The trial court decided that the report was not exempt from disclosure under the exemptions claimed applicable in § 1-19 (b), but that the report *was* exempt under the prefatory clause of § 1-19 (a).

The defendants, on appeal, claim that the trial court erred in concluding (1) that the chief medical examiner was an aggrieved party, (2) that the prefatory clause of § 1-19 (a) exempted the autopsy report from the disclosure provisions of the FOIA, and (3) that the FOIC committed errors in law or findings and entered orders which were erroneous, in light of the evidence adduced at the administrative hearing.

"The Chief Medical Examiner shall not release the records in a criminal case to anyone else requesting them until such time as the State's Attorney has indicated in writing no objection. . . .

"(5) The records of the Office of the Medical Examiner may also contain copies of records of hospitalization, reports of police investigation, coroner's findings and copies of certificates of death. Copies of such records and reports cannot be obtained from the Office of the Medical Examiner, but must be requested from the hospitals, police departments and coroners issuing the records and reports. Copies of certificates of death must be obtained from the registrars of vital statistics of the towns in which the deaths occurred. . . ."

[6] General Statutes § 1-19 (b) provides: "Nothing in sections 1-15, 1-18a, 1-19 to 1-19b, inclusive, and 1-21 to 1-21k, inclusive, shall be construed to require disclosure of (1) preliminary drafts or notes provided the public agency has determined that the public interest in withholding such documents clearly outweighs the public interest in disclosure; (2) personnel or medical files and similar files the disclosure of which would constitute an invasion of personal privacy; (3) records of law enforcement agencies not otherwise available to the public which records were compiled in connection with the detection or investigation of crime, if the disclosure of said records would not be in the public interest because it would result in the disclosure of (A) the identity of informants not otherwise known, (B) information to be used in a prospective law enforcement action if prejudicial to such action, (C) investigatory techniques not otherwise known to the general public, (D) arrest records of a juvenile, which shall also include any investigatory files, concerning the arrest of such juvenile, compiled for law enforcement purposes or (E) the name and address of the victim of a sexual assault under section 53a-70, 53a-70a, 53a-71, 53a-72a, 53a-72b or 53a-73a, or injury or risk of injury, or impairing of morals under section 53-21, or of an attempt thereof . . . ."

The defendants' argument that the trial court erred in finding that the chief medical examiner was an aggrieved party must first be resolved. The office of the chief medical examiner functions under the direction of the commission on medicolegal investigations. General Statutes § 19a-403. The regulations pertaining to access to the records of the office of the chief medical examiner provide that all requests for such records be addressed to the chief medical examiner. Regs., Conn. State Agencies § 19-525-10 (c).

General Statutes § 19a-406 describes the powers and duties of the chief medical examiner. The FOIC's order in this case is directed to the chief medical examiner. By implication, the head of an administrative agency to whom an FOIC's disclosure order is directed, is an aggrieved party. *Maher* v. *Freedom of Information Commission*, 192 Conn. 310, 472 A.2d 321 (1984). Therefore, the trial court did not err in concluding that the chief medical examiner was an aggrieved party.

The defendants argue that the autopsy report was not exempt under the prefatory clause of § 1-19 (a), and, therefore, the trial court erred in failing to disclose it. They mount a twofold challenge to the trial court's conclusion, asserting that General Statutes § 19a-411 does not provide the commission on medicolegal investigations with authority to promulgate regulations which override the expressed legislative intent of disclosing a public agency's records embodied in General Statutes § 1-19. Alternatively, they argue that any such authority pursuant to General Statutes (Rev. to 1981) § 19-535, the predecessor of General Statutes § 19a-411, was repealed by implication upon the enactment of Public Acts 1975, No. 75-342.

In order to place the defendants' claims in perspective, it is appropriate to look at the legislative history of General Statutes § 19a-411. The office of the chief

medical examiner was established in 1969 and, at that time, the predecessor of what is now General Statutes § 19a-411, which involves the records of the chief medical examiner and their disclosure, was enacted. Public Acts 1969, No. 699. Section 12 of that act became General Statutes (Rev. to 1981) § 19-535, and provided: "The office of medicolegal investigations shall keep full and complete records properly indexed, giving the name, if known, of every person whose death is investigated, the place where the body was found, the date, cause and manner of death, and all other relevant information concerning the death, and a copy of the death certificate. The full report and detailed findings of the autopsy and toxicological and other scientific investigation, if any, shall be a part of the record in each case. The office shall promptly notify of such death and deliver to the state's attorney and the coroner having jurisdiction over the case copies of all pertinent records relating to every death as to which further investigation may be advisable. Any state's attorney, coroner, chief of police or other law enforcement official may, upon request, secure copies of such records or other information deemed necessary by him to the performance of his official duties. Any person may obtain copies of such records upon such conditions and payment of such fees as may be prescribed by the commission, provided no person with a legitimate interest therein shall be denied access to such records. Upon application by the chief medical examiner or state's attorney to the superior court for the county in which the death occurred, or to any judge of the superior court in such county when said court is not then sitting, said court or such judge may limit such disclosure to the extent that there is a showing by the chief medical examiner or state's attorney of compelling public interest against disclosure of any particular document or documents. In the discretion of the commission, pub-

lic authorities, professional, medical, legal or scientific bodies or universities or similar research bodies may have access to all records upon such conditions and payment of such fees as may be prescribed by the commission. Where such information is made available for scientific or research purposes, such conditions shall include a requirement that the identity of the deceased persons shall remain confidential and shall not be published."

That statute, fairly read, provided the commission on medicolegal investigations with authority to withhold these records from disclosure to the general public. The statute provided that "no person with a legitimate interest therein shall be denied access to such records." By implication, one can infer that the commission, in prescribing the conditions for access to such records, could deny access to those records to those not having a legitimate interest. The cross-reference to General Statutes § 1-19 was added in 1971. Public Acts 1971, No. 412, § 6.

General Statutes (Rev. to 1981) § 19-535 was thereby amended by replacing the phrase "medicolegal investigations" with "the medical examiner" and by inserting the following sentence: "The report of examinations conducted by the chief medical examiner, deputy medical examiner or an authorized assistant medical examiner, and of the autopsy and other scientific findings may be made available to the public only through the office of the medical examiner and in accordance with the regulations of the commission and of section 1-19."

The sentence was added to provide that records in cases investigated by the medical examiner were only available to the public through the office of the medical examiner. See remarks of Senator Jay W. Jackson, 14 S. Proc., Pt. 4, 1971 Sess., pp. 1696-97, and the remarks of Representative James F. Bingham, 14 H.R.

Proc., Pt. 7, 1971 Sess., p. 3085. The amendment was not intended to strip the commission of its authority to prescribe the conditions and the fees for copies of the office of the chief medical examiner's records. At the time, General Statutes § 1-19 (a) exempted from disclosure, records so exempted by administrative regulations.

The language of General Statutes § 19a-411 evinces a legislative intent that the commission would have the authority to regulate the disclosure of its records to the general public.

Regulations adopted by the commission on medicolegal investigations concerning access to the records of the chief medical examiner's office have the force of a statute. *Pecker* v. *Aetna Casualty & Surety Co.*, 171 Conn. 443, 449, 370 A.2d 1006 (1976); *Fusco-Amatruda Co.* v. *Tax Commissioner*, 168 Conn. 597, 604, 362 A.2d 847 (1975); *Citerella* v. *United Illuminating Co.*, 158 Conn. 600, 608, 266 A.2d 382 (1969). It is therefore concluded that until 1975 the commission had the authority to promulgate regulations restricting access to the records of the office of the chief medical examiner.

The defendants argue that any authority to restrict access to the records of the chief medical examiner's office given to the commission on medicolegal investigations by promulgating regulations pursuant to General Statutes (Rev. to 1981) § 19-535 was repealed, by implication, by the enactment of Public Acts 1975, No. 75-342, § 2. That act amended the prefatory clause of General Statutes § 1-19 (a) to add, "[e]xcept as otherwise provided by any federal law or state statute." Prior to that amendment, records exempted by administrative regulation were included within the terms of the statute. The defendants assert that this amendment clearly evinced a legislative intent to prohibit the regulations of state agencies from barring access to records

and, therefore, any authority for such regulations was repealed by implication. *East Haven* v. *New Haven,* 159 Conn. 453, 468–70, 271 A.2d 110 (1970). The defendants' reliance on that doctrine is questionable when its contemporaneous legislative history is examined.

"Repeal by implication is not favored. *Knights of Columbus Council* v. *Mulcahy,* 154 Conn. 583, 591, 227 A.2d 413 [1967]; *Costa* v. *Reed,* 113 Conn. 377, 385, 155 A. 417 [1931]" *Hirschfeld* v. *Commission on Claims,* 172 Conn. 603, 606, 376 A.2d 71 (1977). The legislative history indicates that in response to a question propounded by a legislator as to whether an applicant for parole could receive, under this bill, detailed information as to his status, the sponsor of the bill commented: "[T]here is a general exclusion in the Bill itself concerning records, reports and statements exempted by state statutes. There is a further exclusion concerning records of law enforcement agencies. It would be possibly, I guess on my part, but I would say that, because I don't know what the parole statutes say, we certainly didn't peruse every section of the General Statutes in dealing with this Bill. But if they are privileged and exempt from inspection, as they now exist, then they would continue to be so under the blanket exclusion . . . ." 18 H. R. Proc., Pt. 8, 1975 Sess., pp. 3904—3905 (remarks of Representative Martin B. Burke). This point was emphasized when the same sponsor of the bill later stated: "[As] I have indicated on several occasions, the Committee did not make an attempt, nor do I possess sufficient knowledge of the entire General Statutes to know what records, reports and statements are exempted from public disclosure." 18 H. R. Proc., Pt. 8, 1975 Sess., p. 3907 (remarks of Representative Martin B. Burke).

The United States Supreme Court, in interpreting the federal Freedom of Information Act, addressed a similar issue. *Administrator, FAA* v. *Robertson,* 422

U.S. 255, 95 S. Ct. 2140, 45 L. Ed. 2d 164 (1975). Federal decisions regarding the federal Freedom of Information Act have given Connecticut courts a decisional path in the interpretation of its state legislation on the same subject. *Wilson* v. *Freedom of Information Commission,* 181 Conn. 324, 333, 435 A.2d 353 (1980). In the former case, the federal aviation administration refused to release certain reports to the respondents, claiming that the records sought were exempt from disclosure by statute and thus were within 5 U.S.C. 552 (b) (3) (1976), which provided in pertinent part: "This section does not apply to matters that are . . . (3) *specifically* exempted from disclosure by statute . . . ." (Emphasis added.)

The documents were claimed to be protected from disclosure by virtue of § 1104 of the Federal Aviation Act of 1958, 49 U.S.C. § 1504. *Administrator, FAA* v. *Robertson,* supra, 257–58. That section permitted the withholding of information where the administration deemed that the interests of the objecting party would be adversely affected and the interests of the public do not require disclosure. Id., 259. Delegations of such authority by statute to agencies to withhold information prior to the passage of the Freedom of Information Act were not repealed by implication. Id., 265. Congress subsequently amended 5 U.S.C. § 552 (b) (3) in 1976 by Pub. L. 94-409, 90 Stat. 1247. That amendment defined more particularly those statutes that specifically exempted material from disclosure, thereby overruling the above cited decision. *Consumer Product Safety Commission* v. *GTE Sylvania, Inc.,* 447 U.S. 102, 121–22 n.18, 100 S. Ct. 2051, 64 L. Ed. 2d 766 (1980). One commentator has stated that "an observer is compelled to note that the Supreme Court was both legally and historically correct in *Robertson* . . . ." 1 O'Reilly, Federal Information Disclosure § 13.05, p. 13-13.

This court, however, has the benefit of a subsequent amendment to General Statutes § 1-19, which sheds light on the construction of the prefatory exemption intended by the legislature. The pertinent language in General Statutes § 1-19 (a) was amended by Public Acts 1984, No. 84-112, § 1, which added the following sentence to General Statutes § 1-19 (a): "Any agency rule or regulation or part thereof, that conflicts with the provisions of this subsection or diminishes or curtails in any way the rights granted by this subsection shall be void."

The legislative history of this amendment to General Statutes § 1-19 is illuminating. Senator John C. Daniels, commented on the floor of the senate: "This bill is important in that it provides for the [nullification] of agency rules or regulations that conflict with the Connecticut Freedom of Information Act as presented in Section 1-19a of the Connecticut General Statutes. This bill ultimately protects the rights of the public to have access to agency records that have not been exempted by the Legislature. . . . In summary, Mr. President, the bill would *specify* any agency rule or regulation that conflicts with or diminishes the right of access to public records would be void." (Emphasis added.) 27 S. Proc., Pt. 2, 1984 Sess., pp. 668–69.

A subsequent legislative act may clarify the legislative intent of an earlier related act. *Circle Lanes of Fairfield, Inc.* v. *Fay,* 195 Conn. 534, 539–41, 489 A.2d 363 (1985); *Baker* v. *Norwalk,* 152 Conn. 312, 317, 206 A.2d 428 (1965). This subsequent amendment demonstrates that the legislature intended to have General Statutes § 1-19 as amended by Public Acts 1975, No. 75-342, supersede any agency regulation limiting the public's access to an administrative agency unless the exemption was set forth by the legislature in a statute. The trial court, therefore, erred in deciding that the regulations supersede the disclosure provisions of General Statutes § 1-19.

It is, however, necessary to address the plaintiff's claims involving alternate grounds upon which the judgment may be affirmed.[7]

The plaintiff argues that the autopsy report was exempt from disclosure under General Statutes § 1-19 (b) (1) because the report was incomplete at the time of the request and that the chief medical examiner, by following the regulations of the commission, had determined that the public interest in withholding the information clearly outweighed the public interest in disclosing the information.

The defendants do not dispute, and the trial court found based on the record before the FOIC, that the report was incomplete at the time of the request. The issue is whether the plaintiff correctly weighed the public interest in withholding the records against the public interest in disclosing the records so as to conclude that the former clearly outweighed the latter. An agency must indicate the reasons for such a determination and "those reasons must not be frivolous or patently unfounded." *Wilson* v. *Freedom of Information Commission,* supra, 339. The plaintiff argues, in her brief, that the commission's regulations established that the agency weighed the pros and cons of disclosure. In effect, the plaintiff through the guise of a statutory exemption, by virtue of General Statutes § 1-19 (b) (1), restates the identical argument pressed with regard to the prefatory clause of General Statutes § 1-19 (a), and urges that the regulation supersedes the statute. The regulation must give way to the statute. The trial court, noting the standard of judicial review of the administrative agency's actions, pursuant to General

---

[7] The plaintiff, pursuant to Practice Book § 3012, filed a preliminary statement of issues presenting alternative grounds upon which the judgment may be affirmed. Those issues involved the applicability of the exemptions to disclosure provided in § 1-19 (b) (1), § 1-19 (b) (2) and § 1-19 (b) (3).

Statutes § 4-183 (g),[8] properly decided that the FOIC did not err in finding that the plaintiff failed to sustain her burden of proving the applicability of this statutory exemption.

The plaintiff also argues that the trial court and the FOIC erred in not finding the autopsy report exempt from disclosure under General Statutes § 1-19 (b) (2) and that, therefore, the trial court's decision may be upheld on that ground. General Statutes § 1-19 (b) provides in pertinent part: "Nothing in [section] . . . 1-19 . . . shall be construed to require disclosure of . . . (2) personnel or medical files and similar files the disclosure of which would constitute an invasion of personal privacy . . . ." The FOIC classified the autopsy report as a personnel, medical or similar file within the meaning of § 1-19 (b) (2), but found that the disclosure of the autopsy report would not constitute an invasion of personal privacy.

The Supreme Court of Colorado in a similar factual context considered, on appeal, whether the trial court erred in ordering autopsy reports released to a newspaper. *Denver Publishing Co.* v. *Dreyfus,* 184 Colo. 288, 520 P.2d 104 (1974). In that case, the parties stipulated that the city pathologist would testify that autopsy reports in general might contain information which, if public, would embarass the family of the deceased. Id.,

---

[8] General Statutes § 4-183 provides in pertinent part: "(g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

292. The Colorado Supreme Court advocated examining the specific autopsy reports in question as opposed to looking at autopsy reports in general to conclude whether the autopsy reports should be disclosed. Here, the trial court noted that an autopsy report in general may be embarrassing but concluded, on the basis of the administrative record, that such had not been established with regard to this autopsy report.

Connecticut, prior to the amendment of General Statutes § 1-19 by Public Acts 1975, No. 75-342, addressed a somewhat similar claim. In *Meriden Record Co.* v. *Browning,* 6 Conn. Cir. Ct. 633, 294 A.2d 646 (1971), a town clerk and registrar of vital statistics refused to provide a newspaper with a certified copy of an individual's death record. The exemption at issue here was raised as a defense to disclosure there, and the argument advanced in support thereof was that a diagnosis of the cause of death if made public might constitute an invasion of personal privacy. Id., 634. General examples of embarrassing causes of death were supplied. The trial court rejected that argument in the abstract and inspected, in camera, the particular death record to determine whether its release would constitute an invasion of personal privacy. Id., 637–38. Similarly, our review of the record indicates that the trial court and the FOIC did not err in finding § 1-19 (b) (2) inapplicable here.[9]

---

[9] The trial court as an alternate ground for its holding concluded that the invasion of privacy referred to in § 1-19 (b) (2) applied solely to living persons. Although there is support for that determination in the language of the exemption and the interpretation of similar language in the federal Freedom of Information Act; *Providence Journal Co.* v. *F.B.I.,* 460 F. Sup. 778, 793 (D.R.I. 1978), rev'd on other grounds, 602 F.2d 1010 (1st Cir. 1979), cert. denied, 444 U.S. 1071, 100 S. Ct. 1015, 62 L. Ed. 2d 752 (1980); 2 O'Reilly, Federal Information Disclosure § 20, p. 20-18; there is implicitly lower court support in this state for the contrary. *Meriden Record Co.* v. *Browning,* 6 Conn. Cir. Ct. 633, 294 A.2d 646 (1971). 3 Restatement (Second), Torts § 652 I provides, "Except for the appropriation of one's name or likeness, an action for invasion of privacy can be maintained only by

The plaintiff lastly argues that the trial court and the FOIC erred in concluding that the autopsy report was not exempt from disclosure under § 1-19 (b) (3), and that, consequently, the trial court's judgment should be affirmed on that ground. General Statutes § 1-19 (b) provides in pertinent part: "Nothing in [section] . . . 1-19 . . . shall be construed to require disclosure of . . . (3) records of law enforcement agencies not otherwise available to the public which records were compiled in connection with the detection or investigation of a crime, if the disclosure of said records would not be in the public interest because it would result in the disclosure of (A) the identity of informants not otherwise known, (B) information to be used in a prospective law enforcement action if prejudicial to such action, (C) investigatory techniques not otherwise known to the general public . . . . "

A virtually identical argument was pressed in *Denver Publishing Co.* and rejected by that court. *Denver Publishing Co.* v. *Dreyfus,* supra. The plaintiff premises her claim that the office of the chief medical examiner is a law enforcement agency on the office's statutory responsibility to investigate deaths which fall within one of the categories enumerated in General Statutes § 19a-406 and on the office's close working relationship with the state's attorney's office. A similar claim was made by the department of income maintenance and was found to be an insufficient factual basis from which to conclude that a public agency was a law enforcement agency for the purposes of the FOIA. *Maher* v. *Freedom of Information Commission,* 192 Conn. 310, 316–17, 472 A.2d 321 (1984). The transmis-

a living individual whose privacy is invaded." General Statutes § 19a-411 provides that if the records of the chief medical examiner's office are made available to research groups the identity of the deceased shall remain confidential. In light of our disposition of this claim of error, we need not and do not reach this issue.

sion of information to a law enforcement agency does not, in and of itself, make the agency transmitting the information a law enforcement agency. Id.

Even if we assume, arguendo, that the office of the chief medical examiner was a law enforcement agency for the purposes of the FOIA, the plaintiff's defense to disclosure would continue to be unpersuasive. The second hurdle of the exemption is that the records are not otherwise available to the public. Under General Statutes § 19a-411, absent a court order, any person with a legitimate interest in the records of the chief medical examiner's office is given access to such records by statute. The trial court properly left undisturbed FOIC's finding that the § 1-19 (b) (3) did not apply to the plaintiff.

There is error, the judgment is set aside and the case is remanded with direction to dismiss the appeal of the plaintiff.

In this opinion the other judges concurred.