[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The defendant has moved for summary judgment claiming that Conn. Gen. Stat. 38-275 prohibits the claim being made by plaintiff's insurer.
The issue presented is whether Conn. Gen. Stat. 38-275, as it existed when suit was commenced, prohibited an insurance company from exercising its right of subrogation against an insured when the insurer had become insolvent.
The defendant's motion for summary judgment requires an evaluation of the Connecticut Guaranty Association Act, hereinafter the "Act", as it stood in March of 1987, when the plaintiff commenced this action, and as it was amended in 1988.
This action was commenced on March 17, 1987, at which time the Connecticut Guaranty Association Act, defined a "covered claim" as:
 "Covered claim" means an unpaid claim, including, but not limited to, one for unearned premiums, which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this chapter applies issued by an insurer, if such insurer becomes an insolvent insurer after October 1, 1972, and (a) the claimant or insured is a resident of this state at the time of the insured event; or (b) the property from which the claim arises is permanently located in this state, provided the term "covered claim" shall not include any amount due any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise;
Conn. Gen. Stat. 38-275 (Rev. to 1987) (emphasis added).
With respect to insolvent insurers, as defined by the Act, the Connecticut Insurance Guaranty Association, hereinafter the CT Page 10659 "Association", becomes obligated to the extent of covered claims within defined limitations. It is deemed the insurer to the extent of its obligations and to such extent has the rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent. Conn. Gen. Stat. 38-278 (Rev. to 1987) (now 38a-841).
Conn. Gen. Stat. 38-275 (Rev. to 1987), as amended by Conn. Pub. Act. No. 87-290, 1, eff. June 10, 1987 (1987) and Conn. Pub. Acts No. 88-76, 2, eff. Apr. 20, 1988 (1988), now reads in relevant part as follows:
 "Covered claim" means an unpaid claim, including, but not limited to, one for unearned premiums, which arises out of and is within the coverage and subject to the applicable limits of an insurance policy to which this chapter applies issued by an insurer, if such insurer becomes an insolvent insurer after October 1, 1971, and (a) the claimant is a resident of this state at the time of the insured event; . . . or (c) the property from which the claim arises is permanently located in this state, provided the term "covered claim" shall not include any amount due any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise; provided that a claim for any such amount, asserted against a person insured under a policy issued by an insurer which has become an insolvent insurer, which if it were not a claim by or for the benefit of a reinsurer, insurer, insurance pool or underwriting association, would be a "covered claim" may be filed directly with the receiver of the insolvent insurer but in no event shall any such claim be asserted against the insured of the insolvent insurer. . . ."
Conn. Gen. Stat. 38-275 (Rev. to 1987) as amended by Conn. Pub. Acts No. 87-290, 1, eff. June 10, 1987 (1987) and Conn. Pub. Acts. No. 88-76, 2, eff. Apr. 20, 1988 (1988) (emphasis added).
The plaintiff claims that the earlier Act precluded only subrogation claims against an insurer. The plaintiff argues that the Act did not preclude subrogation claims against the insured and that the Act should not be construed to protect them.
The plaintiff argues that Public Act 88-76, 2 eliminated all CT Page 10660 forms of subrogation. The plaintiff argues that this amendment made a substantive change in existing law, and that if the statute, as amended were applied to pending cases or to actions that arise out of accidents prior to its enactment, it would extinguish substantive rights. Absent clear legislative intent, the plaintiff argues the amendment was prospective in its operation, and did not modify obligations which had already been fixed prior to its enactment. Neiditz v. Morton S. Fine and Assoc. Inc., 199 Conn. 683, 691, 508 A.2d 438 (1986).
The plaintiff proposes that the defendant's interpretation of the statute is barred by the Connecticut Constitution. The Constitution of Connecticut Article First, Section 10, provides:
 All courts shall be open, and every person for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay.
The plaintiff argues that the legislature is without constitutional ability to abolish common law and statutory rights, such as the right of subrogation. First Taxing District v. National Surety Co., 97 Conn. 639, 642, 188 A. 96 (1922); Ecker v. West Hartford, 205 Conn. 219, 234, 530 A.2d 1056 (1987).
"The intent of the legislature is to be found in the meaning of the words of the statute; that is, in what the legislature actually did say, not in what it meant to say." Harris Date Communication, Inc. v. Heffernan, 183 Conn. 194, 198,438 A.2d 11178 (1981) (citations omitted, emphasis original). "In seeking to ascertain the legislative intent, we may look to the history of the statute and the policy underlying it." Lee v. Lee, 145 Conn. 355,358, 143 A.2d 154 (1958) (citations omitted). "In construing a statute, common sense must be used, and courts will assume that the legislature intended to accomplish a reasonable and rational result." State v. Roque, 190 Conn. 143, 151, 460 A.2d 26 (1983) (citations omitted). "A subsequent legislative act may clarify the legislative intent of an earlier related act." Galvin v. Freedom of Information Commission, 4 Conn. App. 468, 479,495 A.2d 1089 (1985) (citations omitted). "An amendment which in effect construes and clarifies a prior statute must be accepted as the legislative declaration of the meaning of the original act." Shelton v. Commissioner, 193 Conn. 506, 514, 479 A.2d 208 (1984) (citations omitted).
The Senate debate, as echoed by House debate on the statute in effect when this matter was brought reads in part:
SENATOR DINELLI: [discussing the Connecticut CT Page 10661 Insurance Guaranty Association Act] Mr. President, this bill provides a means to avoid financial loss to Connecticut residents because of the insolvency of a property casualty insurance company.
* * *
 This bill establishes an association that will be available to adjust claims and pay any losses of any property casualty company which becomes insolvent.
* * *
 SENATOR IVES: I rise to support this bill. . . To protect the policy holders and its a good bill. 14 S. Proc., Pt. 6, 1971 Sess., pp. 2613-2614.
The debate in the Joint Standing Committee on Insurance and Real Estate reveals:
 PETER KELLY: [discussing the Connecticut Insurance Guaranty Association Act] this bill provides the means to avoid financial loss to Connecticut residents because of the insolvency of a property-casualty insurance company. This bill is substantially the same bill as a model bill adopted by the National Association of Insurance Commissioners, which is an organization of the insurance commissioners of the fifty states.
* * *
 In the late 1960's the state insurance commissioners and part of the insurance industry finally realized that playing down the problem of insolvencies just didn't work. Consumers were being hurt and on a personal scale, an insolvency can be ruinous. The bill that is before you today is the result of the combined efforts of all the insurance commissioners of the fifty states and from advisory groups from industry.
* * *
 The insurance industry is opposed to that concept and being practical with people we would like to see consumers protected in the best way with the least possible cost.
CT Page 10662
* * *
 This bill provides for protections of residents of this state. . .
* * *
 We take pride in the record of the Connecticut Insurance Department as it relates to protecting Connecticut residents from insolvent insurance companies, but we are not infallible and want to see that if we make an error in judgment, Connecticut residents will not suffer a financial loss.
Conn. Joint Standing Committee Hearings, Insurance and Real Estate, Pt. 1, 1971 Sess., pp. 55-59.
The legislative history reveals that the intent of he legislature was to protect Connecticut residents from loss associated with insolvent insurance carriers. If an insurance company were allowed to exercise its rights of subrogation against the defendant directly when the defendant's insurer has become insolvent, such action would be in contravention of the general legislative intent.
The Connecticut Insurance Guaranty Association was created to provide a resource for persons insured by or with claims against policies issued by an insurance company that has become insolvent. The act was intended to protect the insolvent insurers and the insolvent insurer's insureds. It provides a substantive alternative to subrogation rights which have been eliminated.
While the legislative history of the 1988 amendment is not illuminating, a subsequent legislative act may clarify the legislative intent of an earlier related act. Galvin v. Freedom of Information Commission, 4 Conn. App. 468, 479 (1985). Any amendment which, in effect, construes and clarifies a prior statute must be accepted as the legislative declaration of the meaning of the original act. Shelton v. Commissioner, 193 Conn. 506,514 (1984).
Since the intent of the Act was to protect claimants and policyholders, then, it would be anomalous to say that the very person the Act was designed to protect, the insured, does not have protections against subrogation claims. "A statute is not to be interpreted to thwart its purpose." Roque, supra, 151. (citations omitted). Accordingly, the defendant's motion for summary judgment is granted. CT Page 10663
ELAINE GORDON, JUDGE