CATHERINE A. GALVIN *v.* FREEDOM OF INFORMATION COMMISSION ET AL. (12840)

PETERS, C. J., SHEA, DANNEHY, CALLAHAN and COVELLO, Js.

Argued October 2—decision released November 25, 1986

*Jane S. Scholl,* assistant attorney general, with whom were *Richard J. Lynch,* assistant attorney general, and, on the brief, *Joseph I. Lieberman,* attorney general, for the appellant (plaintiff).

*Steven Spellman,* for the appellees (defendant David W. Schoolcraft et al.)

*Mitchell W. Pearlman,* general counsel, and *Constance L. Chambers,* assistant general counsel, Freedom of Information Commission, filed a brief as amici curiae.

PETERS, C. J. The dispositive issue on this appeal is whether autopsy reports compiled by the office of Connecticut's chief medical examiner are public records subject to public inspection under General Statutes § 1-19 (a),[1] the mainstay provision of the Freedom of Information Act. The plaintiff, Dr. Catherine A. Galvin,

---

[1] "[General Statutes] Sec. 1-19. ACCESS TO PUBLIC RECORDS. EXEMPT RECORDS. (a) Except as otherwise provided by any federal law or state statute, all records maintained or kept on file by any public agency, whether or not such records are required by any law or by any rule or regulation, shall be public records and every person shall have the right to inspect such records promptly during regular office or business hours or to receive a copy of such records in accordance with the provisions of section 1-15. Any agency rule or regulation or part thereof, that conflicts with the provisions of this subsection or diminishes or curtails in any way the rights granted by this subsection shall be void."

was the state's chief medical examiner at all times relevant to this appeal. She refused to furnish a copy of an autopsy report requested by the defendant David W. Schoolcraft, a reporter for the defendant Norwich Bulletin Company. The defendants complained to the Freedom of Information Commission (FOIC). After a hearing, the FOIC ordered Dr. Galvin to furnish the defendants with a copy of the autopsy report. She appealed the decision to the Superior Court, *Purtill, J.,* which sustained her appeal. The defendants appealed to the Appellate Court, which set aside the trial court's judgment and rendered judgment dismissing the plaintiff's appeal. After petitioning for certification, the plaintiff appealed to this court. We reverse the judgment of the Appellate Court.

The underlying facts are undisputed. On October 13, 1981, a sixteen year old Norwich boy, Dwayne Dodd, was shot and killed in the course of a struggle with a Norwich police officer. Pursuant to General Statutes § 19a-406 (then § 19-530),[2] the medical examiner's office performed an autopsy on Dodd's body. On October 21, 1981, at the office of the chief medical examiner in Farmington, the defendant Schoolcraft orally requested Dr. Galvin to furnish him with a copy of the autopsy report. The plaintiff refused to do so. She indicated, however, that Schoolcraft could obtain a copy

[2] General Statutes § 19a-406 provides in relevant part: "(FORMERLY SEC. 19-530). POWERS AND DUTIES OF CHIEF MEDICAL EXAMINER. CERTIFIED PATHOLOGISTS. AUTOPSIES. (a) The chief medical examiner shall investigate all human deaths in the following categories: (1) Violent deaths, whether apparently homicidal, suicidal or accidental, including but not limited to deaths due to thermal, chemical, electrical or radiational injury and deaths due to criminal abortion, whether apparently self-induced or not; (2) sudden or unexpected deaths not caused by readily recognizable disease; (3) deaths under suspicious circumstances; (4) deaths of persons whose bodies are to be cremated, buried at sea or otherwise disposed of so as to be thereafter unavailable for examination; (5) deaths related to disease resulting from employment or to accident while employed; (6) deaths related to disease which might constitute a threat to public health."

of the report upon the completion of a pending investigation by the office of the state's attorney, provided that he obtained the Dodd family's consent to disclosure of the report. Neither Schoolcraft nor the defendant Norwich Bulletin Company (Bulletin) ever sought or obtained such consent.

Shortly after the meeting with Dr. Galvin, Schoolcraft and the Bulletin filed a complaint with the FOIC, seeking to compel disclosure of the autopsy report. The FOIC received the complaint on November 2, 1981. After a hearing on February 18, 1982, the FOIC rendered a decision ordering the plaintiff to disclose the report. On January 12, 1984, the Superior Court sustained the plaintiff's appeal of the FOIC's decision. The Appellate Court found error and ordered dismissal of the plaintiff's appeal in *Galvin* v. *Freedom of Information Commission,* 4 Conn. App. 468, 495 A.2d 1089 (1985).

On appeal to this court, the plaintiff claims that the Appellate Court erred in holding that: (1) state administrative regulations that limit public access to autopsy reports,[3] enacted pursuant to General Statutes

[3] The regulations provide in relevant part: "Sec. 19-525-10. REPORTS AND FORMS; INQUIRIES; RECORDS

"(a) Reports of investigations and of autopsies are prepared on standard forms issued by the Office of the Medical Examiner. The original reports of investigations, reports of hospital deaths, and of authorized autopsies are transmitted to the Office of the Medical Examiner and copies are obtainable only from the Chief Medical Examiner.

"The standard forms utilized by the Office of the Medical Examiner include: (1) telephone notice of death; (2) report of investigation; (3) hospital report of death; (4) identification form; (5) autopsy report; (6) receipt of evidence.

"(b) Retention of records; inspection of records. The Office of the Medical Examiner keeps full and complete records of every death reported and investigated. These records pursuant to Section 1-19 of the Connecticut General Statutes, are not open to public inspection. They are retained at the Office of the Medical Examiner for a period of ten years from the date

§ 19a-411,[4] are invalid under General Statutes § 1-19 (a); and (2) General Statutes § 1-19 (b) (2), which exempts from disclosure under § 1-19 "personnel or medical files and similar files the disclosure of which would constitute an invasion of personal privacy," did not apply to

when the death is first reported to it; after which time, the complete files are microfilmed and the original records disposed of.

"(c) . . . .

"Copies of reports prepared by personnel of the Office of the Medical Examiner, Assistant Medical Examiners and designated pathologists and the Toxicological Services Section of the Connecticut State Department of Health as well as other laboratories where pertinent, or detailed findings of other scientific investigations, are furnished upon payment of fees and upon conditions established by the Commission on Medicolegal Investigations. Copies of records are furnished to those having a legitimate interest therein upon completion of the investigation into the death and final certification of the cause of death. Certified copies of such records are admissible as evidence in any court in the State.

\* \* \*

"(2) Requests for records sought by an attorney acting on behalf of an estate should be accompanied by a duly executed authorization by the executor or administrator of the estate.

"Requests by attorneys, insurance claims agents or other interested parties, other than the next of kin or persons acting on behalf of the next of kin, should state reasons for which records are required.

"(3) Upon receipt of request from defense counsel of record in a criminal case for copies of reports in said case, the Chief Medical Examiner shall promptly notify the Office of the State's Attorney which has jurisdiction of such request and shall release without charge therefor, within seven working days, to the defense attorney such copies as requested unless the Chief Medical Examiner is notified within said period of time that an application limiting disclosure has been made by the State's Attorney pursuant to provisions of Section 19-535 of the Connecticut General Statutes.

"The Chief Medical Examiner shall not release the records in a criminal case to anyone else requesting them until such time as the State's Attorney has indicated in writing no objection. . . ."

[4] "[General Statutes] Sec. 19a-411. (Formerly Sec. 19-535). RECORDS. The office of the chief medical examiner shall keep full and complete records properly indexed, giving the name, if known, of every person whose death is investigated, the place where the body was found, the date, cause and manner of death and containing all other relevant information concerning the death and a copy of the death certificate. The full report and detailed findings of the autopsy and toxicological and other scientific investigation, if any, shall be a part of the record in each case. The office shall promptly

the autopsy report in question. Because we agree with the plaintiff's first claim of error, we need not resolve her second claim.[5]

I

Before addressing the merits of this appeal, we must resolve an important threshold question of jurisdiction. The FOIC's schedule for hearing and rendering decision in this case exceeded the time limitations imposed by General Statutes § 1-21i (b). See *Hartford* v. *Freedom of Information Commission,* 201 Conn. 421, 518 A.2d 49 (1986). We have previously held that the

notify the state's attorney having jurisdiction of such death and deliver to him copies of all pertinent records relating to every death in which further investigation may be advisable. Any state's attorney, chief of police or other law enforcement official may, upon request, secure copies of such records or other information deemed necessary by him to the performance of his official duties. The report of examinations conducted by the chief medical examiner, deputy chief medical examiner, an associate medical examiner or an authorized assistant medical examiner, and of the autopsy and other scientific findings may be made available to the public only through the office of the chief medical examiner and in accordance with section 1-19 and the regulations of the commission. Any person may obtain copies of such records upon such conditions and payment of such fees as may be prescribed by the commission, provided no person with a legitimate interest therein shall be denied access to such records. Upon application by the chief medical examiner or state's attorney to the superior court for the judicial district in which the death occurred, or to any judge of the superior court in such judicial district when said court is not then sitting, said court or such judge may limit such disclosure to the extent that there is a showing by the chief medical examiner or state's attorney of compelling public interest against disclosure of any particular document or documents. Public authorities, professional, medical, legal or scientific bodies or universities or similar research bodies may, in the discretion of the commission, have access to all records upon such conditions and payment of such fees as may be prescribed by the commission. Where such information is made available for scientific or research purposes, such conditions shall include a requirement that the identity of the deceased persons shall remain confidential and shall not be published."

[5] At oral argument the defendants abandoned the claim, raised in their brief, that the Appellate Court erred in holding that the plaintiff was an aggrieved party with standing to appeal the decision of the Freedom of Information Commission.

§ 1-21i (b) time constraints are mandatory, and that the FOIC's failure to adhere to them invalidates its subsequent action. *Board of Police Commissioners* v. *Freedom of Information Commission,* 199 Conn. 451, 452–53, 507 A.2d 1385 (1986); *Zoning Board of Appeals* v. *Freedom of Information Commission,* 198 Conn. 498, 503–506, 503 A.2d 1161 (1986). After these decisions were rendered, the General Assembly enacted Public Acts 1986, No. 86-408, which, in § 2 (a), retrospectively validated FOIC actions not in compliance with § 1-21i (b). In *Hartford* v. *Freedom of Information Commission,* supra, we held that this retrospective validation is a legitimate exercise of legislative authority. We therefore hold that Public Acts 1986, No. 86-408, § 2 (a), preserved the FOIC's jurisdiction to act in this case.

## II

The resolution of the plaintiff's dispositive claim requires the reconciliation of the provisions of two statutes, each of which deals with the public's right of access to records kept on file by public agencies. General Statutes § 19a-411 sets forth specific guidelines for the preparation, maintenance and disclosure of autopsy reports and other records of investigations conducted by the medical examiner's office. These statutory guidelines, and the administrative regulations which they expressly authorize, impose stricter limitations on the disclosure of such records than the Freedom of Information Act, General Statutes § 1-19, permits. By contrast, under § 1-19 (a), "[e]xcept as otherwise provided by any federal law or state statute," *all* records of public agencies are public records subject to public inspection.

The plaintiff claims that § 19a-411 gives the Commission on Medicolegal Investigations, which supervises the medical examiner's office, authority to promulgate

restrictive regulations concerning the disclosure of autopsy reports. Thus, the plaintiff argues, § 19a-411 is a state statute coming within the "[e]xcept as otherwise provided" exception to § 1-19, with the result that autopsy reports fall outside the ambit of public records.

The defendants claim that § 19a-411 does not exclude autopsy reports from the coverage of the Freedom of Information Act. They argue that, read as a whole and in conjunction with § 1-19, § 19a-411 incorporates the provisions of the Freedom of Information Act, and permits only such regulations on disclosure as do not conflict with the act. The defendants maintain that § 1-19 (a), as amended by Public Acts 1975, No. 75-342, and Public Acts 1984, No. 84-112,[6] invalidates administrative regulations, such as those of the Commission on Medicolegal Investigations, that conflict with § 1-19.[7] The Appellate Court relied on this provision of § 1-19 (a) to hold that § 1-19, as amended, superseded the commission's regulations limiting public access to autopsy reports. *Galvin* v. *Freedom of Information Commission*, supra, 479.

---

[6] Public Acts 1975, No. 75-342, § 2 (a), provides in relevant part:

"Section 1-19 of the General statutes is repealed and the following is substituted in lieu thereof:

"(a) Except as otherwise provided by any federal LAW or state statute [or regulation], all records [made,] maintained or kept on file by any [executive, administrative legislative or judicial body,] PUBLIC agency, [commission or official of the state, or any political subdivision thereof,] whether or not such records are required by any law or by any rule or regulation, shall be public records and every [resident of the state] PERSON shall have the right to inspect or copy such records at such reasonable time as may be determined by the custodian thereof."

Public Acts 1984, No. 84-112, § 1, added the following sentence to § 1-19 (a): "Any agency rule or regulation or part thereof, that conflicts with the provisions of this subsection or diminishes or curtails in any way the rights granted by this subsection shall be void."

[7] Neither party disputes that § 1-19 and the regulations are in conflict. In particular, the commission's regulations provide: "These records pursuant to Section 1-19 of the Connecticut General Statutes, are not open to public inspection." Regs., Conn. State Agencies § 19-525-10 (b).

In our view, the disposition of this case turns on whether the authority to restrict disclosure of autopsy reports stems solely from the regulations of the Commission on Medicolegal Investigations, or whether such authority is *expressly* derived from § 19a-411.[8] In the former case, the restrictions would be void under the provision of § 1-19 (a) that invalidates regulations inconsistent with the Freedom of Information Act. In the latter case, the restrictions would be valid under the provision of § 1-19 (a) that permits other statutes to exclude statutorily defined records from the category of public records to which the Freedom of Information Act applies. We are persuaded that autopsy reports fall within the latter category and that restrictions on their disclosure are therefore valid.

General Statutes § 19a-411 is not a model of the draftsman's art. We must rely on the tools of statutory construction to resolve its ambiguous and facially inconsistent provisions. It is an accepted principle of statutory construction that, if possible, the component parts of a statute should be construed harmoniously in order to render an overall reasonable interpretation. *Shelby Mutual Ins. Co.* v. *Della Ghelfa,* 200 Conn. 630, 637, 513 A.2d 52 (1986); *Peck* v. *Jacquemin,* 196 Conn. 53, 63, 491 A.2d 1043 (1985). Where statutes contain specific and general references covering the same subject matter, the specific references prevail over the general. *Atwood* v. *Regional School District No. 15,* 169 Conn. 613, 622, 363 A.2d 1038 (1975); *Meriden* v. *Board of Tax Review,* 161 Conn. 396, 402, 288 A.2d 435 (1971).

---

[8] We emphasize "expressly" to distinguish this type of statute from one which authorizes an administrative agency to adopt general rule-making procedures. An example of the latter type of statute is General Statutes § 4-167, which in subsection (a) (1) provides that administrative agencies shall "[a]dopt as a regulation a description of its organization, stating the general course and method of its operations and the methods whereby the public may obtain information or make submissions or requests."

With these principles in mind, we turn to the construction of § 19a-411. The guidelines set forth in § 19a-411 for the disclosure of records of the medical examiner's office vary according to the categories of persons seeking disclosure. The statute differentiates among three classes of record seekers. Two of the classes are restricted to specific types of persons. The third class, into which the defendants fall, is general, encompassing "the public."

The first of the specific classes defined in § 19a-411 includes "[a]ny state's attorney, chief of police or other law enforcement official." Any such official "may, upon request, secure copies of such records or other information *deemed necessary by him to the performance of his official duties.*" (Emphasis added.) Thus, the statute expressly requires law enforcement officials to make some showing of necessity as a condition to obtaining the records of the investigations of the medical examiner's office.

The second specific class in § 19a-411, less narrowly defined than the first, includes "[p]ublic authorities, professional, medical, legal or scientific bodies or universities or similar research bodies." Within this category, access to records kept by the medical examiner's office is *"in the discretion of the commission* [on medicolegal investigations] . . . *upon such conditions and payment of such fees as may be prescribed by the commission."* (Emphasis added.) The statute itself specifies one such condition: "where such information is made available for scientific or research purposes . . . the identity of the deceased persons shall remain confidential and shall not be published." Thus, § 19a-411 delimits the rights of scientists and researchers, among others, to obtain access to records of the medical examiner's office. The statute also expressly narrows the scope of access, when available, to prevent disclosure of the deceased's identity.

The portion of § 19a-411 governing disclosure to the general public provides that autopsy reports and other investigative reports "may be made available to the public *only through the office of the chief medical examiner and in accordance with section 1-19 and the regulations of the commission.* Any person may obtain copies of such records *upon such conditions and payment of such fees as may be prescribed by the commission,* provided no person with a legitimate interest therein shall be denied access to such records." (Emphasis added.) Unlike the language relating to the two specific classes of record seekers, the language in this portion of the statute does not set forth any express restrictions on disclosure. As the Appellate Court held, however, the statute does condition the availability of autopsy reports to the general public on compliance with the regulations of the commission on medicolegal investigations. *Galvin* v. *Freedom of Information Commission,* supra, 476.

The defendants, focusing on the language "in accordance with § 1-19," argue that the legislature intended the records of the medical examiner's office to be public records available for inspection under the provisions of § 1-19. This construction of § 19a-411, however, would allow the general provisions of the statute governing "the public" to supersede the express provisions governing the specifically enumerated classes of disclosure seekers. Under the defendants' construction, for example, a representative of a medical school conceivably could evade the restrictions that § 19a-411 imposes on disclosure for scientific or research purposes by obtaining an autopsy report as a member of "the public," whose right to disclosure, under the defendants' construction, is limited only by § 1-19. Such a broad construction would defeat the policy behind the principle that specific statutory references prevail over general references where the same subject matter is

concerned. See *Atwood* v. *Regional School District No. 15,* supra; *Charlton Press, Inc.* v. *Sullivan,* 153 Conn. 103, 110, 214 A.2d 354 (1965).

The restrictions that § 19a-411 imposes on access to the records of the medical examiner manifest a consistent pattern. Both for specific classes, and for the general public, the statute embodies a policy of conditional rather than unfettered disclosure. With regard to public access to autopsy records, the statute expressly mandates that disclosure must be "in accordance with . . . the regulations of the commission." In seeking copies of records, disclosure seekers are subject to "such conditions and payment of such fees as may be prescribed by the commission."[9] The source of the records is similarly restricted: the public's access is "only through the office of the chief medical examiner."

It is in this context that we construe the reference in § 19a-411 on which the defendants rely so heavily: "in accordance with § 1-19." We cannot accept the defendants' contention that, notwithstanding the remainder of § 19a-411, this lone, general reference evinces a legislative intent to make autopsy reports public records under § 1-19. To the extent that § 1-19 requires unconditional disclosure of the records of public agencies, its literal incorporation into § 19a-411 would defeat the policy of § 19a-411 and make its own provisions hopelessly inconsistent. We must, if possible, reconcile subsidiary provisions of a statute with the general tenor of the statute as a whole. See, e.g., *Peck* v. *Jacquemin,* supra, 63. Accordingly, we conclude that § 19a-411 incorporates only those provisions of § 1-19 that are not inconsistent with the former statute's restrictions on disclosure. These provisions

---

[9] In the context of the entire statute, we are unpersuaded by the defendants' claim that this language merely permits the commission to charge fees, such as copying charges, to compensate for the cost of disclosure.

include, but are not limited to, the exceptions to disclosure set forth in § 1-19 (b), insofar as they apply to the types of records covered by § 19a-411.[10]

The defendants cite other language in § 19a-411 to buttress their claim that they are entitled to unconditional access to the autopsy report. In particular, they point to a provision in § 19a-411 that requires authorities to seek judicial authorization to limit disclosure of medical examiners' records. In relevant part, § 19a-411 provides that, "[u]pon application by the chief medical examiner or state's attorney" to the superior court, the court "may limit such disclosure to the extent that there is a showing by the chief medical examiner or state's attorney of compelling public interest against disclosure of any particular document or documents." The defendants claim that this language requires a showing of "compelling public interest" before *any* person can be denied access to records of the medical examiner's office.

We do not read the provision so broadly. We reiterate that the statute, considered in its entirety, conditions the right to disclosure on compliance with all relevant administrative regulations and other requirements. Accordingly, we construe the provision at issue to apply only when disclosure is sought to be denied to a party who otherwise complies with the conditions imposed by § 19a-411, including the administrative regulations to which the statute refers.[11]

---

[10] Examples of applicable provisions of § 1-19 (b) include the § 1-19 (b) (1) exception for "preliminary drafts or notes provided the public agency has determined that the public interest in withholding such documents clearly outweighs the public interest in disclosure," and § 1-19 (b) (2), pertaining to "personnel or medical files and similar files the disclosure of which would constitute an invasion of personal privacy." We express no opinion on the applicability of these, or any other provisions of § 1-19 (b), to this case.

[11] This construction is also supported by the language of § 19a-411 immediately preceding the excerpt on which the defendant relies: "Any person may obtain copies of such records upon such conditions and payment of

Our construction of § 19a-411 recognizes that the legislature might reasonably have considered the information contained in autopsy reports to be sufficiently sensitive to warrant the imposition of disclosure restrictions not applicable to other records of public agencies. We note, for example, that autopsy reports could contain information which, if disclosed, might cause embarrassment and unwanted public attention to the relatives of the deceased. See generally *Meriden Record Co.* v. *Browning,* 6 Conn. Cir. Ct. 633, 634, 294 A.2d 646 (1971). Section 19a-411's prohibition on disclosure of the deceased's identity in reports furnished for scholarly, research and other related purposes indicates legislative awareness of a privacy interest in the contents of autopsy reports.

In the case of public records, General Statutes § 1-19 (b) (2) provides an exception to disclosure under § 1-19 for "personnel or medical files and similar files the disclosure of which would constitute an invasion of personal privacy." Yet neither § 1-19 nor any other provision of the Freedom of Information Act provides a mechanism whereby a deceased person's family may invoke a right to privacy before the Freedom of Information Commission. In cases such as the one before us, the family members of the deceased have no standing to receive notice of an FOIC hearing, let alone to object or otherwise be heard at the hearing. Their interests must be represented by the official body seeking

---

such fees as may be prescribed by the commission, *provided no person with a legitimate interest therein shall be denied access to such records."* (Emphasis added.) This language is mirrored in the disclosure regulations of the Commission on Medicolegal Investigations, which provide in relevant part: "Copies of records are furnished to those having a legitimate interest therein . . . ." Regs., Conn. State Agencies § 19-525-10 (c). The defendants do not claim that they are persons with "a legitimate interest" within the meaning of either the statute or the regulation. We need not and do not consider, therefore, the validity of administrative distinctions between persons based on the presence or absence of a "legitimate interest" in disclosure.

to oppose disclosure, in this case the chief medical examiner, whose standing to invoke their claims of privacy is questionable. Our construction of General Statutes § 19a-411 thus permits the vindication of privacy rights that cannot effectively be asserted under the Freedom of Information Act.

General Statutes § 1-19 (a) provides that all records kept on file by public agencies shall be public records "except as otherwise provided by any federal law or state statute." General Statutes § 19a-411 provides such an exception for autopsy reports. We hold therefore that autopsy reports are not records accessible to the general public pursuant to General Statutes § 1-19. Accordingly, we hold that the Appellate Court erred in concluding that, notwithstanding § 19a-411, the disclosure regulations of the Commission on Medicolegal Investigations contravene the provisions of § 1-19 and are therefore void.

The judgment of the Appellate Court is reversed and the case is remanded with direction to sustain the appeal of the plaintiff from the order of the Freedom of Information Commission.

In this opinion the other justices concurred.