MULLINS, J.
**374 The central issue in this appeal is whether the search and seizure statutes, General Statutes §§ 54-33a through 54-36p, provide a basis for an exemption from the disclosure requirements of the Freedom of Information Act (act), General Statutes § 1-200 et seq. Specifically, we must decide whether the trial court improperly concluded that the search and seizure statutes satisfy the requirements set forth in General Statutes § 1-210 (a),[1] which exempts documents **375 from disclosure under the act that are "otherwise *762 provided by any federal law or state statute ...." (Emphasis added.) We conclude that the search and seizure statutes do not meet the requirements set forth in § 1-210 (a) and, accordingly, reverse the judgment of the trial court.
The following facts, as found by the trial court, and procedural history are relevant to the present appeal. In January, 2014, the plaintiffs, the Commissioner of Emergency Services and Public Protection and the Department of Emergency Services and Public Protection,[2] received a request under the act from the defendant The Hartford Courant Company (Courant), and its reporter, the defendant David Altimari. In this request, the Courant and Altimari sought copies of certain documents referred to in the report prepared by the Connecticut State Police on the shooting that took place at Sandy Hook Elementary School on December 14, 2012. More specifically, the trial court's memorandum of decision notes that this request sought, inter alia, the following documents from the department: a spiral bound book written by the shooter, Adam Lanza, entitled "The Big Book of Granny," "a photo of the class of 2002-2003 at Sandy Hook Elementary School," and a "spreadsheet ranking mass murders by name, number killed, number injured, types of weapons used, and disposition." (Internal quotation marks omitted.)
The department did not file a timely response to this request. As a result, the Courant and Altimari filed a complaint with the named defendant, the Freedom of Information Commission (commission). After they filed **376 that complaint, the department responded to the initial request by letter. In that letter, the supervisor of the department's legal affairs unit, Christine Plourde, stated that "there are no documents responsive to your ... request" because the request sought "access to or copies of ... items of evidence that were seized or otherwise collected as part of the criminal investigation of the incident. Evidence collected as part of a criminal investigation does not constitute a public record under the [act]." (Internal quotation marks omitted.) Notwithstanding this response, the commission held a hearing on the complaint.
The parties in that administrative proceeding presented testimony, exhibits, and argument.[3] Specifically, the department asserted that the documents were not subject to disclosure because they were not public records[4] under the act insofar as *763 they (1) do not relate "to the conduct of the public's business," (2) "are evidence under the control of the [J]udicial [B]ranch pursuant to the statutory scheme governing search warrants **377 and seized property," (3) are the private property of Adam Lanza or his mother, Nancy Lanza, and "disclosure would constitute an invasion of [their] personal privacy," and (4) are not included in the department's public records retention schedule because they are documents seized pursuant to a search warrant.
The commission rejected the department's claims and concluded that the documents were public records under the act. Specifically, the commission rejected the department's claim that the documents did not relate "to the conduct of the public's business" for purposes of § 1-200 (5). Instead, the commission determined that "in the aftermath of the shootings, there was heightened public interest in the shootings, in determining how and why such shootings occurred, and in preventing such a horrific crime from happening again."
The commission also found that, "[a]lthough the [department was] provided the opportunity to offer evidence that the requested documents are exempt from disclosure, [it] declined to do so. Instead, [the department] offered an affidavit from Plourde [averring] that, although she had not looked at the requested documents, she believed that some of the documents might be exempt from disclosure under [§] 1-210 (b) [ (2), (10), (11) and (17) ]." Consequently, the commission found that the department "failed to prove that any of the requested documents are exempt from disclosure pursuant to any exemption." Accordingly, the commission ordered the department to provide a copy of the documents to the Courant and Altimari.
Thereafter, the department filed an appeal from the commission's decision to the trial court pursuant to General Statutes § 4-183 of the Uniform Administrative Procedure Act (UAPA). The department also filed an application to stay enforcement of the final decision of the commission pending appeal, which was granted.
**378 The Division of Criminal Justice then filed a motion to intervene in the present case as a party plaintiff, which was granted by the trial court. See footnote 2 of this opinion.
The trial court ultimately agreed with the commission that the documents were public records, concluding that "documents seized pursuant to a search warrant '[relate] to the conduct of the public's business' and, therefore, constitute public records under the act." Unlike the commission, however, the trial court then concluded that the documents were exempt from disclosure pursuant to § 1-210 (a).[5] Specifically, the trial court concluded the search and seizure statutes "act as a shield from public disclosure of all seized property not used in a criminal prosecution." These appeals followed.[6]
On appeal to this court, the defendants assert that the trial court improperly concluded *764 that the documents were exempt from disclosure pursuant to § 1-210 (a). Specifically, the defendants assert that the trial court improperly failed to follow this court's existing precedent interpreting § 1-210 (a), which requires that the express terms of federal law or state statute must address confidentiality or otherwise limit the copying or disclosing of the documents at issue. The defendants further assert that the trial court improperly failed to construe the exemption in § 1-210 (a) narrowly, as required by the act.
In response, the department asserts that the trial court properly concluded that property seized pursuant to a search warrant is exempt from disclosure under **379 the act. More particularly, the department claims that this court's existing precedent establishes that state statutes that conflict or create conflicting obligations with public disclosure fall within the exemption from disclosure under § 1-210 (a). The department further asserts, as an alternative ground for affirmance, that the documents are not public records under the act. We agree with the defendants.
We begin with the relevant legal principles and standard of review. "This court reviews the trial court's judgment pursuant to the ... UAPA .... Under the UAPA, it is [not] the function ... of this court to retry the case or to substitute its judgment for that of the administrative agency.... Even for conclusions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion.... [Thus] [c]onclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts.... [Similarly], this court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes.... Cases that present pure questions of law, however, invoke a broader standard of review than is ... involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion.... Furthermore, when a state agency's determination of a question of law has not previously been subject to judicial scrutiny ... the agency is not entitled to special deference.... We have determined, therefore, that the traditional deference accorded to an agency's interpretation of a statutory term is unwarranted when the construction of a statute ... has not previously been subjected to judicial **380 scrutiny [or to] a governmental agency's time-tested interpretation .... Chairperson, Connecticut Medical Examining Board v . Freedom of Information Commission , 310 Conn. 276, 281-82, 77 A.3d 121 (2013). Even if time-tested, we will defer to an agency's interpretation of a statute only if it is reasonable; that reasonableness is determined by [application of] our established rules of statutory construction.... Dept. of Public Safetyv . State Board of Labor Relations , 296 Conn. 594, 599, 996 A.2d 729 (2010).
"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature.... In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered.... The test to determine ambiguity *765 is whether the statute, when read in context, is susceptible to more than one reasonable interpretation.... When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter .... Chairperson, Connecticut Medical Examining Boardv.Freedom of Information Commission , supra, 310 Conn. [at] 283 [77 A.3d 121]. The issue of statutory interpretation presented in this case is a question of law subject to plenary review. See id., [at] 282-83 [77 A.3d 121]." (Internal quotation marks omitted.) Freedom of Information Officer, Dept. of Mental Health & Addiction Services v . Freedom of Information Commission , 318 Conn. 769, 780-82, 122 A.3d 1217 (2015). **381 I
We first consider the defendants' claim that the trial court improperly concluded that the documents were exempt from disclosure because the search and seizure statutes, §§ 54-33a through 54-36p, create a shield from public disclosure for all seized property not used in a criminal prosecution. For the reasons that follow, we agree with the defendants.
In the present case, the trial court examined the obligations created by the search and seizure statutes. The trial court explained that "[t]hese provisions establish that, after property is seized pursuant to a warrant, the [agency] seizing it maintains custody of it until ordered to dispose of it by a court. The disposition provisions ... make it mandatory that the court return seized property, other than contraband and the like, to an aggrieved criminal defendant in the event of an unlawful seizure or to any owner by the time of the final disposition of the criminal case." The trial court concluded, therefore, that "[t]he act conflicts with these provisions by providing for public disclosure of documents that were private property before seizure by the police and that a court would ordinarily order returned to the rightful owner by the end of a criminal case."
Although the trial court acknowledged that the state will often disclose seized items during the criminal process and that those items will likely become part of the public domain, that disclosure comes from the state's obligations to prosecute all crimes under General Statutes § 51-277 (b) and to disclose certain evidence to criminal defendants pursuant to Bradyv.Maryland , 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The trial court explained that the conflict between the act and the search and seizure statutes occurs in situations in which seized items have not been disclosed in the course of a prosecution.
**382 The trial court explained that courts "ultimately [have] a mandatory, statutory duty to return the seized property, unless it is contraband or otherwise unlawful to possess, to the owner before anyone from the public will have an opportunity to see it. In these situations, the seizure statutes act as a shield from public disclosure." The trial court further explained that "[d]isclosure to the public under the act in such cases is in direct conflict with the ownership rights protected by the seizure statutes."
The trial court further explained that release of seized items under the act would render meaningless the court's obligation under the search and seizure statutes to return the items to their owner. The trial court cited to the basic tenet of statutory construction that a statute "must be construed, if possible, such that no clause, *766 sentence or word shall be superfluous, void or insignificant." (Internal quotation marks omitted.) Connecticut Podiatric Medical Assn.v . Health Net of Connecticut, Inc. , 302 Conn. 464, 474, 28 A.3d 958 (2011). Accordingly, the trial court concluded that the act could not be interpreted in a manner that would allow for public disclosure of the documents. Instead, the trial court concluded that the search and seizure statutes "act as a shield from public disclosure of all seized property not used in a criminal prosecution."
Even assuming that the trial court's interpretation of the court's obligations under the search and seizure statutes is correct-namely, to return seized items to the lawful owner-we must determine whether those obligations render the documents exempt from the act because they are "otherwise provided by ... state statute ...." General Statutes § 1-210 (a). As we explained previously herein, this question of statutory construction is subject to plenary review. See, e.g., **383 Freedom of Information Officer, Dept. of Mental Health & Addiction Servicesv . Freedom of Information Commission , supra, 318 Conn. at 780-82, 122 A.3d 1217.
"This question of statutory interpretation also must be resolved in light of certain general principles governing the act. First, we have often recognized the long-standing legislative policy of the [act] favoring the open conduct of government and free public access to government records. [See Glastonbury Education Assn.v . Freedom of Information Commission , 234 Conn. 704, 712, 663 A.2d 349 (1995) ; see also] Perkinsv . Freedom of Information Commission , 228 Conn. 158, 166, 635 A.2d 783 (1993) ; Board of Educationv. Freedom of Information Commission , 208 Conn. 442, 450, 545 A.2d 1064 (1988) ; Wilsonv . Freedom of Information Commission , 181 Conn. 324, 328, 435 A.2d 353 (1980). We consistently have held that this policy requires us to construe the provisions of the [act] to favor disclosure and to read narrowly that act's exceptions to disclosure. See, e.g., Giffordv . Freedom of Information Commission , [227 Conn. 641, 651, 631 A.2d 252 (1993) ]; Superintendent of Policev.Freedom of Information Commission , 222 Conn. 621, 626, 609 A.2d 998 (1992).... Waterbury Teachers Assn. v . Freedom of Information Commission , 240 Conn. 835, 840, 694 A.2d 1241 (1997). Second, whether records are disclosable under the act does not depend in any way on the status or motive of the applicant for disclosure, because the act vindicates the public's right to know, rather than the rights of any individual. See Rosev.Freedom of Information Commission , 221 Conn. 217, 233, 602 A.2d 1019 (1992)." (Internal quotation marks omitted.) Chief of Policev.Freedom of Information Commission , 252 Conn. 377, 387, 746 A.2d 1264 (2000).
This court also has explained that "[t]he exemptions contained in [various state statutes] reflect a legislative intention to balance the public's right to know what its agencies are doing, with the governmental and private **384 needs for confidentiality.... [I]t is this balance of the governmental and private needs for confidentiality with the public right to know that must govern the interpretation and application of the [act]." (Internal quotation marks omitted.) Dept. of Public Safetyv . Freedom of Information Commission , 298 Conn. 703, 726, 6 A.3d 763 (2010), quoting Maherv . Freedom of Information Commission , 192 Conn. 310, 315, 472 A.2d 321 (1984) ; see also Wilsonv.Freedom of Information Commission , supra, 181 Conn. at 328, 435 A.2d 353 ("the act does not confer upon the public an absolute right to all government information"). "Our construction of the [act] must be guided by the policy favoring disclosure *767 and exceptions to disclosure must be narrowly construed.... [T]he burden of proving the applicability of an exemption rests upon the agency claiming it." (Citation omitted; internal quotation marks omitted.) Pictometry International Corp. v . Freedom of Information Commission , 307 Conn. 648, 672, 59 A.3d 172 (2013).
With these principles in mind, we begin with the language in question. Section 1-210 (a) provides in relevant part: "Except as otherwise provided by any federal law or state statute, all records maintained or kept on file by any public agency, whether or not such records are required by any law or by any rule or regulation, shall be public records and every person shall have the right to (1) inspect such records promptly during regular office or business hours, (2) copy such records ... or (3) receive a copy of such records ...."
"[I]n interpreting [statutory language] we do not write on a clean slate, but are bound by our previous judicial interpretations of this language and the purpose of the statute." New England Road, Inc.v.Planning & Zoning Commission , 308 Conn. 180, 186, 61 A.3d 505 (2013). Thus, determining the meaning and purpose of the exemption provided in § 1-210 (a) requires a review of our previous interpretations of this statutory language.
**385 The defendants assert that the trial court's determination that the search and seizure statutes satisfy the "otherwise provided by any federal law or state statute" exemption of § 1-210 (a) is inconsistent with this court's case law. Specifically, the defendants contend that this court consistently has held that, in order for a statute to form the basis for an exemption pursuant to § 1-210 (a), the statute being cited as the basis for the exemption must, by its express terms, address confidentiality or otherwise limit the copying or disclosing of the documents at issue. We agree.
For instance, this court interpreted the exemption provided in § 1-210 (a) in Chief of Policev . Freedom of Information Commission , supra, 252 Conn. 377, 746 A.2d 1264. In that case, the plaintiff claimed that documents that were the subject of federal civil litigation were exempt from disclosure under the act. Specifically, the plaintiff asserted that, because the disclosure of the documents was subject to the Federal Rules of Civil Procedure, the documents were exempt from disclosure under the act because they were "otherwise provided by ... federal law ...." (Internal quotation marks omitted.) Id., at 398-99, 746 A.2d 1264.
Relying on the terms of the statute, this court reasoned that the reference to federal and state law in § 1-210 (a)"suggests ... a reference to federal and state laws that, by their terms , provide for confidentiality of records or some other similar shield from public disclosure." (Emphasis added.) Id., at 399, 746 A.2d 1264. This court further relied on the legislative history of the act, explaining that "the only references in the entire legislative history of the act to the language in question are consistent with the suggestion that it was intended to refer to other federal and state laws that by their terms shield specific information from disclosure." (Emphasis added.) Id. This court further explained that there was nothing in the legislative history of the act that suggested **386 that the exemption in § 1-210 (a) was intended to encompass the types of determinations made under the Federal Rules of Civil Procedure for disclosing documents during the discovery process. Id., at 399-400, 746 A.2d 1264. Accordingly, this court rejected the plaintiff's claim that the documents were exempt from disclosure under § 1-210 (a) because the Federal Rules of Civil Procedure did not expressly provide for the confidentiality of the records or otherwise *768 limit their disclosure. Id., at 400, 746 A.2d 1264.
In Dept. of Public Safetyv . Freedom of Information Commission , supra, 298 Conn. 703, 6 A.3d 763, this court once again required that the statute in question expressly limit disclosure in order to satisfy the exemption set forth in § 1-210 (a). In that case, the Department of Public Safety claimed that registration information under Megan's Law; see General Statutes § 54-250 et seq. ; was not subject to disclosure under the act. Dept. of Public Safetyv . Freedom of Information Commission , supra, at 726-27, 6 A.3d 763. Specifically, it claimed that General Statutes § 54-258 (a) (4) expressly required confidentiality of registration information and, therefore, that the registration information was exempt from disclosure under § 1-210 (a). Section 54-258 (a) (4) provided that "registration information the dissemination of which has been restricted by court order pursuant to section 54-255 and which is not otherwise subject to disclosure, shall not be a public record and shall be released only for law enforcement purposes until such restriction is removed by the court pursuant to said section." (Emphasis added.)
This court agreed with the Department of Public Safety and concluded that "it is clear that the legislature intended that registration information restricted pursuant to § 54-255, which includes the requested information in this case, should not be disclosed except for law enforcement purposes until the court orders that the restriction be removed."
**387 Dept. of Public Safetyv.Freedom of Information Commission , supra, 298 Conn. at 727, 6 A.3d 763. Accordingly, this court concluded that the express language of Megan's Law that restricted the release of the registration information satisfied the requirements § 1-210 (a). Id.
Then, in Pictometry International Corp.v.Freedom of Information Commission , supra, 307 Conn. at 648, 59 A.3d 172, this court again addressed the § 1-210 (a) exemption. Although the statute at issue in that case did not expressly create any confidentiality for the documents, this court found that the statute at issue satisfied § 1-210 (a) because it expressly limited the disclosure or copying of the records. Id., at 673-74, 59 A.3d 172. In that case, the Department of Environmental Protection received a request for copies of certain computerized aerial photographic images of sites within the state. Id., at 652, 59 A.3d 172. In response to that request, it asserted that the images were exempt from disclosure under the act. Id. Specifically, it claimed that the images were subject to federal copyright law, which limited the use, distribution, and copying of work. Id. The commission determined that the federal copyright law did not satisfy the exemption provided in § 1-210 (a). Id., at 658, 59 A.3d 172.
On appeal to this court, the commission relied on this court's decision in Chief of Police for the proposition that "the federal law exemption applies only to federal statutes that, by their terms, bar the disclosure of certain public records ...." (Emphasis altered.) Id., at 676, 59 A.3d 172. The commission asserted that the exemption in § 1-210 (a) should not apply because federal copyright law permits disclosure, but only limits the use, distribution and copying of the images. Id., at 676-77, 59 A.3d 172. This court rejected the commission's claim and explained that Chief of Police does not require a federal or state law to prohibit disclosure in order to satisfy the "otherwise provided" language in § 1-210 (a) ; rather, it requires that the federal or state law expressly conflict **388 with the requirements of the act. *769 Pictometry International Corp.v . Freedom of Information Commission , supra, 307 Conn. at 677, 59 A.3d 172.
Thus, this court concluded that the federal copyright law satisfied the federal law exemption in § 1-210 (a), explaining that this exemption "embodies the legislature's willingness to defer to federal laws barring disclosure of otherwise disclosable information ...." (Internal quotation marks omitted.) Id., at 672, 59 A.3d 172. This court concluded that, "to the extent that the act and the Copyright Act impose conflicting legal obligations, the Copyright Act is a 'federal law' for purposes of the federal law exemption. Accordingly, although the federal law exemption does not entirely exempt copyrighted public records from the act, it exempts them from copying provisions of the act that are inconsistent with federal copyright law." Id., at 674, 59 A.3d 172.[7]
The other cases in which this court has found that § 1-210 (a) provides an exemption under the act have **389 all required that the state or federal law contain express language that creates confidentiality in the documents or otherwise limits the disclosure, copying, or distribution of the documents. See Commissioner of Correctionv.Freedom of Information Commission , 307 Conn. 53, 74, 52 A.3d 636 (2012) (federal regulation expressly forbidding disclosure of information about person held by state for federal immigration purposes satisfied "otherwise provided" requirement of § 1-210 [a] ); Commissioner of Public Safetyv . Freedom of Information Commission , 204 Conn. 609, 621, 529 A.2d 692 (1987) (statute providing that "the [statewide] organized crime investigative task force may disseminate such information by such means and to such extent as it deems appropriate" satisfied " 'otherwise provided' " requirement of act's state law exemption); Galvinv.Freedom of Information Commission , 201 Conn. 448, 462, 518 A.2d 64 (1986) (state statute authorizing promulgation of regulations limiting disclosure of autopsy reports satisfied " 'otherwise provided' " requirements of act's state law exemption).
Similarly, the Appellate Court also has required that, in order for a statute to form the basis for an exemption pursuant to § 1-210 (a), the statute must by its express terms address confidentiality or otherwise limit the disclosure, copying, or distribution of the documents at issue. See, e.g., Groton Police Dept.v . Freedom of Information Commission , 104 Conn. App. 150, 160, 931 A.2d 989 (2007) (concluding that records from registry of abuse or *770 neglect findings maintained by the Department of Children and Families are exempt from the act under § 1-210 [a] because General Statutes § 17a-101k [a] expressly provided that "[t]he information contained in the registry and any other information relative to child abuse, wherever located, shall be confidential" [internal quotation marks omitted] ). **390 As the foregoing review of case law demonstrates, both this court and the Appellate Court consistently have required that any exemption from disclosure under the "otherwise provided" language of § 1-210 (a) be based on express terms in the state or federal law that either provide for the confidentiality of the documents or otherwise limit disclosure, copying, or distribution of the documents at issue. Such a requirement is consistent with the well established principle that "[o]ur construction of the [act] must be guided by the policy favoring disclosure and exceptions to disclosure must be narrowly construed." (Internal quotation marks omitted.) Pictometry International Corp.v.Freedom of Information Commission , supra, 307 Conn. at 672, 59 A.3d 172.
"In those limited circumstances where the legislature has determined that some other public interest overrides the public's right to know, it has provided explicit statutory exceptions.... We have held that these exceptions must be narrowly construed." Liebermanv.State Board of Labor Relations , 216 Conn. 253, 266, 579 A.2d 505 (1990) ; see, e.g., General Statutes § 35-42 (c) (2) (expressly providing that "[a]ll documentary material or other information furnished voluntarily to the Attorney General ... for suspected violations of [the Connecticut Antitrust Act], and the identity of the person furnishing such documentary material or other information, shall be held in the custody of the Attorney General ... and shall not be available to the public"); General Statutes § 46a-13e (a) (expressly providing that, with certain enumerated exceptions, "[t]he name, address and other personally identifiable information of a person who makes a complaint to the Victim Advocate ... all information obtained or generated by **391 the office [of the Victim Advocate] in the course of an investigation, the identity and location of any person receiving or considered for the receipt of protective services ... all information obtained or generated by the office [of the Victim Advocate] in the course of monitoring the provision of protective services ... and all confidential records obtained by the Victim Advocate or his designee shall be confidential and shall not be subject to disclosure under the [act] or otherwise").
The department relies on a footnote in Commissioner of Correction v. Freedom of Information Commission , supra, 307 Conn. at 65 n. 17, 52 A.3d 636, for the proposition that only exceptions contained within the act are to be construed narrowly, and not those contained in § 1-210 (a) that depend on federal law or other state statutes. We disagree. Although we acknowledge that this court did state that the principle that exceptions to the general rule of disclosure under the act must be narrowly construed "applies to exemptions set forth within the act, not to other laws, especially not to laws enacted by a different sovereign," this statement must be read in the context of the issue being considered. Id. In that case, this court was considering whether a federal regulation prohibiting disclosure of information regarding people held by the state for federal immigration purposes served as the basis for an exemption from the act under § 1-210 (a). Id., at 56-57, 52 A.3d 636. In considering whether the federal regulation applied to information about former detainees or only to current detainees, this court explained that it must follow the *771 agency's interpretation, which supported a broad reading of the regulation-namely, to prohibit disclosure of information about current and former detainees. Id., at 66, 52 A.3d 636. This court concluded that the question was whether the promulgating agency intended it to apply to former detainees. Id., at 66-67, 52 A.3d 636.
In refusing to depart from the broad federal interpretation of the regulation, this court explained that "[o]ur legislature has no power to impose a particular interpretive gloss on federal law." Id., at 65 n.17, 52 A.3d 636. To the extent **392 that this footnote implies that exceptions pursuant to § 1-210 (a) do not require narrow construction, we clarify that today. We reiterate that all exceptions from the act must be construed narrowly to effectuate the purpose of the act, which favors disclosure. Accordingly, we conclude that we must narrowly construe the "otherwise provided" language of § 1-210 (a), otherwise any statute governing an agency's general treatment of records becomes a possible restriction on disclosure-e.g., statutes that govern how state records are archived, or the retention of records by governmental agencies.
In the present case, the trial court pointed to nothing in the express terms of the search and seizure statutes that creates confidentiality in the documents or otherwise limits the disclosure, copying, or distribution of the documents. Indeed, the search and seizure statutes are silent on the issues of confidentiality, copying, or disclosure to the public. Therefore, the trial court's conclusion that the search and seizure statutes form the basis for an exemption under § 1-210 (a) is inconsistent with our case law interpreting this exemption.
Moreover, the basis for the trial court's holding was that "[d]isclosure to the public under the act in such cases is in direct conflict with the ownership rights protected by the seizure statutes." Even if we agree with the trial court that the search and seizure statutes protect the ownership rights of the people whose property has been seized, we cannot conclude that a statutory scheme requiring that property be returned to its owners creates a duty of confidentiality for those items or otherwise limits public disclosure.
Indeed, we are not blind to the fact that limiting the disclosure of seized documents in order to protect the privacy of those whose property is seized, particularly if a criminal proceeding does not result, may be a good or even preferable way in which to deal with documents **393 seized in this manner. The department, however, does not, and cannot, point to express language in the search and seizure statutes providing for such confidentiality, and our task is to "construe [the] statute as written." (Internal quotation marks omitted.) Marcianov . Jimenez , 324 Conn. 70, 77, 151 A.3d 1280 (2016). It is axiomatic that we "may not by construction supply omissions ... or add exceptions merely because it appears that good reasons exist for adding them.... The intent of the legislature, as this court has repeatedly observed, is to be found not in what the legislature meant to say, but in the meaning of what it did say.... It is axiomatic that the court itself cannot rewrite a statute to accomplish a particular result. That is the function of the legislature." (Internal quotation marks omitted.) Id. Accordingly, we cannot impose a duty of confidentiality or restriction on disclosure that is not provided by the express terms of the search and seizure statutes.
Furthermore, our conclusion that the documents at issue in the present case are not exempt from disclosure under the act is supported by the presence of *772 General Statutes § 1-215 (b).[8] Section 1-215 (b) provides in relevant part: "Any personal possessions or effects found on a person at the time of such person's arrest shall not be disclosed unless such possessions or effects **394 are relevant to the crime for which such person was arrested." The treatment of items seized pursuant to an arrest also is governed by the requirements of the search and seizure statutes. See, e.g., General Statutes § 54-36a (b) (1) ("[w]henever property is seized in connection with a criminal arrest or seized pursuant to a search warrant without an arrest, the law enforcement agency seizing such property shall file, on forms provided for this purpose by the Office of the Chief Court Administrator, an inventory of the property seized"). Therefore, if we were to conclude that the search and seizure statutes serve as the basis for an exemption for all items governed by the search and seizure statutes, § 1-215 (b) (3) would be superfluous because any items seized during a person's arrest would be exempt from disclosure under the act. It is axiomatic "that the legislature [does] not intend to enact meaningless provisions.... [I]n construing statutes, we presume that there is a purpose behind every sentence, clause, or phrase used in an act and that no part of a statute is superfluous." (Internal quotation marks omitted.) Connecticut Podiatric Medical Assn.v . Health Net of Connecticut, Inc. , supra, 302 Conn. at 474, 28 A.3d 958. Accordingly, we conclude the presence of § 1-215 (b) lends further support to our conclusion that the search and seizure statutes do not form the basis of an exemption from the act under § 1-210 (a).
Additionally, § 1-210 (b) (3)[9] provides detailed exemptions for law enforcement records where the agency **395 can establish certain criteria. The legislature did not choose to include an exemption for items that are lawfully seized by a law enforcement *773 agency. "Under the doctrine of expressio unius est exclusio alterius-the expression of one thing is the exclusion of another-we presume that when the legislature expresses items as part of a group or series, an item that was not included was deliberately excluded." DeNunziov.DeNunzio , 320 Conn. 178, 194, 128 A.3d 901 (2016). Therefore, the failure of the legislature to include lawfully seized items in the exemptions for records of law enforcement agencies contained within § 1-210 (b) (3) supports our conclusion that records governed by the search and seizure statutes are not exempt from disclosure under the act.
We take this opportunity to point out that we reach the conclusion that the documents in the present case are subject to disclosure on the basis of the unique procedural posture of this case. The department had the opportunity to present evidence at the hearing before the commission establishing that these documents fell within another exception to the act, but it declined to do so. As we have explained previously herein, "the burden of proving the applicability of an exemption rests upon the agency claiming it." Wilsonv . Freedom of Information Commission , supra, 181 Conn. at 329, 435 A.2d 353.
Nevertheless, the department only made legal argument and presented testimony of, and an affidavit from, **396 witnesses who had never seen the documents at issue. Therefore, the commission concluded that the department had failed to produce any evidence that the documents were exempt from disclosure under any statute. Although we do not decide today whether the documents at issue in the present appeal would be exempt from disclosure under another section of the act or another state or federal law, the department's failure to produce sufficient evidence at the hearing before the commission would necessarily be fatal to such a claim.
As this court has explained, "[t]he agency representative may testify concerning the content and use of the documents, or supply affidavits to the commission relating to their content and use. Any such testimony or affidavits must not be couched in conclusory language or generalized allegations, however, but should be sufficiently detailed, without compromising the asserted right to confidentiality, to present the commission with an informed factual basis for its decision in review under the act.... No matter what method is utilized before the commission, however, one thing is clear: It is the agency that bears the burden of proving the applicability of an exemption, and therefore, the nature of the documents in question." (Citations omitted.) Id., at 341, 435 A.2d 353.
For the foregoing reasons, we conclude that the trial court improperly concluded that the search and seizure statutes satisfied the requirements for an exemption from the act under § 1-210 (a).
II
The department asserts that, even if we conclude that the search and seizure statutes do not form the basis for an exemption under § 1-210 (a), this court should affirm the judgment of the trial court on an alternative ground-namely, that the documents at issue in the **397 present appeal were not subject to disclosure because they are not "public records" under the act. We disagree.
Section 1-200 (5) defines " '[p]ublic records or files' " for purposes of the act as "any recorded data or information relating to the conduct of the public's business prepared, owned, used, received or retained by a public agency, or to which a public agency is entitled to receive a copy by law or contract under section 1-218, *774 whether such data or information be handwritten, typed, tape-recorded, printed, photostated, photographed or recorded by any other method."
The department asserts that the documents do not relate "to the conduct of the public's business" as that term is used in § 1-200 (5) because they were created by a private individual and not the department. The commission found that the documents related to the public's business for the following reasons: (1) "there was heightened public interest generally in the shootings and, specifically, in knowing how and why the shootings occurred"; (2) "the requested documents informed the investigation"; (3) "significant public resources were expended in conducting a massive, [yearlong] investigation, and in examining gun control measures and mental health issues arising out of the shootings"; and (4) "there will be no criminal prosecution through which the public otherwise would have any access to the requested documents ...." (Emphasis omitted.)
The trial court disagreed with this analysis, rejecting the notion that the question of whether a document was a public record for purposes of the act would depend on the public's interest in a particular criminal investigation. Instead, the trial court concluded that, "although documents may be privately created and perhaps do not '[relate] to [the conduct of] the public's business' at the time of their creation, the fact that they were **398 lawfully seized by the police means that there was probable cause to believe that, at a minimum, they constitute 'evidence of an offense, or ... evidence that a particular person participated in the commission of an offense ....' [ General Statutes § 54-33a (b) (3) ]. At that point, they do relate to the public's business. For these reasons, the court concludes that documents seized pursuant to a search warrant '[relate] to the conduct of the public's business' and therefore constitute public records under the act." (Footnote omitted.)
In determining whether document seized during the investigation of a crime are public records under the act, we are mindful that the purpose of the act is "to balance the public's right to know what its agencies are doing, with the governmental and private needs for confidentiality.... [I]t is this balance of the governmental and private needs for confidentiality with the public right to know that must govern the interpretation and application of the [act]." (Internal quotation marks omitted.) Dept. of Public Safetyv . Freedom of Information Commission , supra, 298 Conn. at 726, 6 A.3d 763. With this in mind, we agree with the trial court that documents that are not created by an agency, but come into its possession because there was probable cause to believe that they constitute "evidence of an offense, or ... evidence that a particular person participated in the commission of an offense," relate to the conduct of the public's business. General Statutes § 54a-33a (b) (3).
Moreover, our interpretation that documents seized by the police are public records under the act is consistent with other provisions of the act. For instance, as discussed previously in this opinion, § 1-215 (b) provides in relevant part that "[a]ny personal possessions or effects found on a person at the time of such person's arrest shall not be disclosed unless such possessions or effects are relevant to the crime for which such person was arrested." See footnote 8 of this opinion.
**399 If we were to accept the department's claim that items, more specifically documents, seized by the police in the investigation of a crime do not constitute a public record, this provision exempting some seized items from the act would be meaningless. As we have explained, we must interpret statutes so as *775 not to render any term meaningless. See, e.g., Connecticut Podiatric Medical Assn.v.Health Net of Connecticut, Inc. , supra, 302 Conn. at 474, 28 A.3d 958. Accordingly, we reject the department's claim that documents seized by law enforcement in the present case are not public records.
In support of its claim, the department relies on testimony that the documents are not public records because they are not the department's property and they are owned by someone else. Specifically, the department relies on testimony from the Chief State's Attorney, Kevin Kane, who testified before the commission that the seized property did not belong to the department. Kane conceded, however, that the written report describing the items was a public record. In any event, whether the documents constitute a public record for purposes of the act presents a question of law over which we exercise plenary review. See, e.g., Chairperson, Connecticut Medical Examining Boardv.Freedom of Information Commission , supra, 310 Conn. at 281-82, 77 A.3d 121. Therefore, the testimony of the department's witnesses is not necessarily outcome determinative.
The only other support that the department relies on is Boylesv.Preston , 68 Conn. App. 596, 610, 792 A.2d 878, cert. denied, 261 Conn. 901, 802 A.2d 853 (2002), in which the Appellate Court held that evidence from a dismissed criminal case was not a record for purposes of the erasure statute, General Statutes § 54-142a. In Boyles , the Appellate Court considered whether testimony regarding certain videotape evidence from a prior dismissed criminal case could be admitted into evidence **400 in a subsequent civil proceeding. Id. The defendant in that case asserted that the videotape was an erased record within the meaning of the erasure statute because the underlying criminal matter had been dismissed. Id., at 609, 792 A.2d 878. The Appellate Court concluded that the videotape was not subject to erasure because it was not a record for purposes of the erasure statute. Id., at 610, 792 A.2d 878. We conclude that Boyles is inapplicable to the present case because it was based on an entirely different statute with different definitions and a different purpose.
Accordingly, we reject the department's invitation to affirm the judgment of the trial court on the alternative ground that the documents at issue in the present case do not constitute a public record under the act.
The judgment is reversed and the case is remanded to the trial court with direction to deny the department's appeal.
In this opinion the other justices concurred.

General Statutes § 1-210 (a) provides in relevant part: "Except as otherwise provided by any federal law or state statute, all records maintained or kept on file by any public agency, whether or not such records are required by any law or by any rule or regulation, shall be public records and every person shall have the right to (1) inspect such records promptly during regular office or business hours, (2) copy such records in accordance with subsection (g) of section 1-212, or (3) receive a copy of such records in accordance with section 1-212...."
Although § 1-210 has been amended several times since the events underlying the present appeal; see, e.g., Public Acts 2017, No. 17-211, § 1; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

Because the Commissioner of Emergency Services and Public Protection acts through the Department of Emergency Services and Public Protection, for the sake of simplicity, we refer to them collectively as the department hereinafter. We further note that, as discussed subsequently in this opinion, the Division of Criminal Justice filed a motion to intervene as a party plaintiff in the present case, which was granted by the trial court.

Prior to the hearing, the department filed a request to bifurcate. Specifically, the department sought to have the hearing first address whether the documents were indeed public records under the act, and then whether the documents were subject to an exemption from disclosure under the act. The commission denied the request to bifurcate the hearing, explaining that the department "should be prepared to present any additional claims of exemption at the ... hearing ...."
Nevertheless, the testimony presented by the department at the hearing primarily focused on whether the documents were public records under the act. As discussed subsequently in this opinion, the only evidence directly addressing whether the documents were exempt from disclosure was in the form of an affidavit from Plourde. Neither she nor any of the other witnesses at the hearing actually had seen the documents.

General Statutes § 1-200 (5) provides: " 'Public records or files' means any recorded data or information relating to the conduct of the public's business prepared, owned, used, received or retained by a public agency, or to which a public agency is entitled to receive a copy by law or contract under section 1-218, whether such data or information be handwritten, typed, tape-recorded, printed, photostated, photographed or recorded by any other method."

See footnote 1 of this opinion.

The commission appealed from the judgment of the trial court to the Appellate Court. The Courant and Altimari filed a separate appeal from the judgment of the trial court to the Appellate Court. Both of these appeals were transferred to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. Thereafter, the appeals were consolidated.

The department asserts that this court's holding in Pictometry International Corp. supports the trial court's conclusion in the present case. Specifically, the department asserts that, in concluding that federal copyright law formed the basis for an exemption under § 1-210 (a), this court relied on the fact that the federal copyright law imposed "conflicting legal obligations ...." Pictometry International Corp.v . Freedom of Information Commission , supra, 307 Conn. at 674, 59 A.3d 172. The department asserts that the legal obligations imposed by the search and seizure statutes similarly impose conflicting legal obligations-namely, the return of seized property to its owner. We disagree for two reasons.
First, although this court did explain that the federal copyright law and the act imposed "conflicting legal obligations," federal copyright law created specific obligations related to the copying of the documents that had been requested under the act. Id., at 673-74, 59 A.3d 172. Second, the conflicting legal obligations that this court found were based on the express terms of federal copyright law. Id. As we explain in this opinion, in the present case, neither the department nor the trial court point to express terms of the search and seizure statutes that create confidentiality or otherwise conflict with the copying or disclosure requirements under the act. Accordingly, we conclude that Pictometry International Corp. does not support the trial court's conclusion in the present case.

General Statutes § 1-215 (b) provides: "Notwithstanding any provision of the general statutes, and except as otherwise provided in this section, any record of the arrest of any person shall be a public record from the time of such arrest and shall be disclosed in accordance with the provisions of section 1-212 and subsection (a) of section 1-210. No law enforcement agency shall redact any record of the arrest of any person, except for (1) the identity of witnesses, (2) specific information about the commission of a crime, the disclosure of which the law enforcement agency reasonably believes may prejudice a pending prosecution or a prospective law enforcement action, or (3) any information that a judicial authority has ordered to be sealed from public inspection or disclosure. Any personal possessions or effects found on a person at the time of such person's arrest shall not be disclosed unless such possessions or effects are relevant to the crime for which such person was arrested."

General Statutes § 1-210 (b) provides in relevant part: "Nothing in the Freedom of Information Act shall be construed to require disclosure of ... (3) [r]ecords of law enforcement agencies not otherwise available to the public which records were compiled in connection with the detection or investigation of crime, if the disclosure of said records would not be in the public interest because it would result in the disclosure of (A) the identity of informants not otherwise known or the identity of witnesses not otherwise known whose safety would be endangered or who would be subject to threat or intimidation if their identity was made known, (B) the identity of minor witnesses, (C) signed statements of witnesses, (D) information to be used in a prospective law enforcement action if prejudicial to such action, (E) investigatory techniques not otherwise known to the general public, (F) arrest records of a juvenile, which shall also include any investigatory files, concerning the arrest of such juvenile, compiled for law enforcement purposes, (G) the name and address of the victim of a sexual assault under section 53a-70, 53a-70a, 53a-71, 53a-72a, 53a-72b or 53a-73a, voyeurism under section 53a-189a, or injury or risk of injury, or impairing of morals under section 53-21, or of an attempt thereof, or (H) uncorroborated allegations subject to destruction pursuant to section 1-216 ...."